## No. 7707.

### SUCCESSION OF R. W. DOUGHERTY.

Where the real estate of a succession is seized and advertised for sale under executory proc-
ess by a mortgage creditor before the appointment of an administrator, and the adminis-
trator fails to pay off the mortgage debt, the proceeds of the sale will not belong to the
succession for distribution.

The mules, wagons, and farming implements in use on a plantation at the time of its seizure
under executory process, are included in that seizure, and the mortgage creditor making
the seizure is entitled to claim the proceeds of their sale.

The widow is entitled to an allowance of $1000 out of the husband's succession, when there is
satisfactory proof of her necessitous circumstances.

Where the fees of the attorney of a succession set down by the administrator are increased
by the lower judge without cause or proof to justify it, they will be reduced to the sum
allowed by the administrator.

APPEAL from the Parish Court of Bossier.    *Braden, J.*

Looney & Elstner for appellant :

First—All the property, rights, and credits of the succession stand pre-
cisely in the attitude that R. W. Dougherty and his property, rights,
and credits stood at the moment of his death, in June, 1877.

Second—At that moment the law fixes the obligations, privileges, desti-
nation, and distribution of the property, rights, and credits of his
succession.

Third—No heir, creditor, or other person can by acts, agreements,
or transactions defeat the rights vested by law on the other heirs
or creditors of the succession without their consent.

T. T. & A. D. Land, for Durham, opponent and appellee :

An administration was wholly unnecessary. The widow and major heirs
had bound themselves by their unconditional acceptance to the pay-
ment of their virile shares of the debts of the estate. C. C. 988,
992, 999 ; 2 N. S. 475 ; 7 A. 553 ; 9 A. 517.

Article 976 of the Code of Practice requires the appointment of an ad-
ministrator only in case some of the creditors require it. C. C. 1047
(1040) is modified by said article. Succession Story, 3 A. 502.

As all the creditors stood by and acquiesced in the acceptance of the
major heirs and widow in community, and did not demand a separa-
tion of patrimony within the time required by law, they became
owners of their respective interests in the estate, and liable for the
debts of the same.

We see no reason in law, the creditors consenting, which would prevent
major heirs from accepting and becoming owners of an inheritance,
although there might be a minor heir. If the succession be solvent,

the minor heir could demand an immediate partition, as in the succession of Story. If insolvent, the minor heir has no interest.

We believe that the opening of this succession and its administration are mere nullities, and an attempt to administer on the estate of the living.

But considering it as a succession under administration, the widow and R. R. Dougherty, the administrator, have no claims or demands against this opponent, who has nothing to do with the contest between them and James Marks.

If a succession is under administration, then the vendor's privilege and special mortgage of this opponent on the mules, wagons, and other immovables by destination on the Red Chute plantation are superior to the judicial mortgage claimed by James Marks. That mules employed on a plantation are embraced in a mortgage of the lands, although not specially mentioned in the act, was determined by this court in the case of Templeman vs. Gilmer, decided at Monroe, July, 1878.

Succession not represented.

---

The opinion of the court was delivered by

Manning, C. J. R. W. Dougherty died in June 1877. John B. Durham was furnishing him supplies for the cultivation of his crop during that year, and at the time of his death the account for supplies was $917.91 in amount. The contract for the supplies had been recorded. He continued furnishing them under the contract during the remainder of the year, the widow and children remaining on the place, and a grown son acting as overseer. The crop was delivered to Durham, and was sold by him, and did not pay all of his debt. There was no administration of the succession as yet, and the settlement of the account with Durham was complete, so far as the crop effected it, before the succession was formally opened. This was not done until March 7, 1878, when R. R. Dougherty, the son who was overseer, was appointed administrator.

Durham had a mortgage upon a plantation of the deceased, called Red Chute, and sued out executory process to foreclose it in February, a month before the administration was applied for. There was litigation. Marks and Mrs. Pickett filed oppositions claiming the proceeds of sale, and on appeal we adjudicated their rights at Monroe, recognising Durham and Mrs. Pickett as concurrent mortgage creditors with vendor's privilege, and fixing Marks' position as that of a judgment creditor with judicial mortgage. Durham then bought Mrs. Pickett's claim, and at the sale bought the place for less than the aggregate of the two claims he held.

This place was in the hands of the sheriff before and at the time

administration was granted. It was never in the possession of the administrator as such, and the proceeds of its sale do not belong to the succession for distribution, since they did not extinguish the mortgage debt and vendor's privilege, and there is no dispute as to the validity of the sale, or as to the sufficiency of the price, or other like matter, and there were no oppositions claiming priority of payment for privileges.

Durham also advanced to and supplied the place for the crop of 1878, and the proceeds of its sale leaves a small balance due from him to the administrator. Durham had advanced money to pay the expenses of administration, paid the burial expenses and some others, which were repaid by the sale of the property.

Seven mules, three waggons, and some farming implements upon the Red Chute plantation were included in the seizure under executory process of Durham, but before that litigation was terminated and a sale had under that process, the administrator sold them at probate sale. Durham prays an amendment of the judgment by recognising his vendor's privilege and mortgage upon these movables, as attached to the realty, and applying the proceeds of their sale to the further payment of his debt, which had not been extinguished by the sale of the land. We think he is entitled to it.

Marks opposes various items of the account which need be only briefly noticed. The widow's portion of one thousand dollars was properly allowed, the proof of her necessitous circumstances being satisfactory. The overseer's wages were moderate, and his claim had been recorded, and was rightly allowed as a privilege on the crops. The Holliday and Herold debts which he opposes as not privileged were classified only as ordinary debts. He insists that the account must stand as to the credits admitted by the administrator. These include the proceeds of sale of the Red Chute plantation, and cotton crops of 1877 and 1878. We have already said as to the first that they were absorbed by the mortgage debt, and as to the second, they were applied to the privilege of the furnisher of supplies.

The lower court increased the fees of the succession attorneys without good cause, or proof to justify it. They were stated on the account at $281.25 and they must remain at that sum. Therefore

It is ordered and decreed that the judgment of the lower court is amended by reducing the sum allowed the attorneys to $281.25, and by recognising J. B. Durham's mortgage and vendor's privilege as operating upon the mules, waggons, and farming implements, and applying the proceeds of their sale to the further extinguishment of his mortgage debt, and as thus amended, that it is affirmed, the costs of appeal to be borne by Marks, as well as the costs of his opposition, and all other costs at the charge of the succession.