## No. 13,495.

HIBERNIA NATIONAL BANK VS. SARAH PLANTING AND REFINING COMPANY, LIMITED, JOHN E. KIMBRO, THIRD OPPONENT.

### SYLLABUS.

1. To constitute the immobilization of movable property, it is essential that the ownership of the original immovable (plantation in this instance) and the movable placed upon it be vested in the same person.
2. That fiction of the law which holds that a movable placed upon an immovable becomes immovable by destination does not destroy the vendor's privilege resting upon the former.
3. A pre-existing indebtedness is sufficient consideration for the transfer of property.

### ON REHEARING.

1. Where mules and agricultural implements belonging to the lessee or the overseer of a plantation are seized and advertised for sale with the plantation, as immovables by destination thereon, and a private understanding is had by which the sale is permitted to take place, and the plantation and mules and implements are adjudicted to the seizing creditor, who in pursuance of the private understanding sells them as bought, taking the notes of the purchaser for the price with reserve of vendor's privilege and special mortgage to secure the payment of the notes, the notes being made to the order of the purchaser and by him endorsed in blank, the said lessee or overseer will be estopped from contesting the mortgage and vendor's privilege thus created on the mules and agricultural implements, as against a third person who has acquired the notes in good faith and in due course of business.

APPEAL from the Nineteenth Judicial District, Parish of Iberia— Voorhies, J.

---

*Walter J. Burke & Bro.,* for Plaintiff, Defendant in Opposition, Appellant.

---

*Andrew Thorpe* and *Thomas Horace Thorpe,* for Third Opponent, Appellee.

The Opinion of the Court, on Motion to Dismiss, was delivered by WATKINS, J.

On the Merits, by BLANCHARD, J.

On Rehearing, by PROVOSTY, J.

## ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

WATKINS, J. The third opponent and appellee seeks to dismiss the appeal on the ground (1) that no citation of appeal has ever been issued to, or served upon him, as the law requires; (2) that the appellant has not furnished an appeal bond in conformity to law.

The latter ground is only urged in the alternative that the former should not be sustained.

### I.

The averment of the motion is, that no citation of appeal has been directed to the third opponent nor served upon him as required by law, either in person or otherwise.

It appears from the record that the judgment appealed from was signed on the 9th of November, 1899, in favor of the third opponent, and that the plaintiff sought to appeal by means of petition and citation.

An order of appeal was regularly granted, making the appeal returnable to this court, sitting in New Orleans, on the fourth Monday of March, 1900, and according to law—fixing the amount of the bond for suspensive appeal according to law, and devolutive at one hundred dollars.

A citation of appeal was issued by the clerk and placed in the hands of the sheriff; but he made a return that he had failed to make service upon the appellee on account of his absence from the State.

As an answer to the motion to dismiss, the appellant's counsel has tendered for our consideration, affidavits of the clerk and sheriff, that no fault in the premises was attributable to either the plaintiff or its counsel.

We think that is evident from the record, aside from those affidavits.

It appears that no proper service of citation of appeal has been made

since the appellee's motion was filed, and it will be necessary that all further proceedings be stayed until the appellee has been cited.

Cockerham vs. Bosley, 52 La. Ann. 65.

The objections urged to the appeal bond are (1) that the amount for which the bond was given is below that fixed in the order of appeal, and it is therein expressly stated to be for a suspensive appeal; (2) that the bond is not conditioned as the law requires, in that it declares that the appeal was made returnable on the fourth Monday of *November*, 1900, whereas the transcript was filed in this court on the 26th of March, 1900. Neither of these objections are at all serious.

The evident intention of the appellant was to give a devolutive appeal bond, notwithstanding the term "suspensive" was inadvertently employed; and, being so considered, we think *this* objection is not well taken.

(2) The recital in the bond that the appeal was returnable on the fourth Monday of *November*, 1900, is manifestly a clerical error, inasmuch as the order of court makes the appeal returnable according to law, and the citation of appeal specifies the return day as the fourth Monday of *March*, 1900.

The motion to dismiss is denied, and it is ordered that further proceedings be suspended until appellee is cited according to law, and to this end it is directed that the case go over until the term of this court beginning the first Monday of November A. D. 1900.

---

BLANCHARD, J.   A motion to dismiss the appeal herein because of defective service of citation of appeal, or want of citation, having been denied, and time granted appellant to make proper citation of appeal, a renewal of the motion to dismiss is now made on the ground that the second service of citation of appeal is legally insufficient.

And so it is, judged by the return of service of the second citation of appeal first made by the deputy sheriff. But a second, or amended, return made by him and certified as conforming to the facts, cures the defect.

The motion to dismiss is denied.

## ON THE MERITS.

The Hibernia National Bank, holding notes and mortgages of the Sarah Planting and Refining Company for a large amount of money,

seized under executory process the Sarah plantation, with its equipment, and advertised the same to be sold by the sheriff.

Included in this seizure and advertisement were wagons, harness, implements, etc., and nineteen mules.

John E. Kimbro intervened, by third opposition, alleging that the Sarah Company had purchased from him the wagons, harness, implements, mules, etc., on the said plantation for the price and sum of $2603.50 and owed him therefor that sum, to secure payment of which he had the vendor's privilege. He asked judgment for the amount due him with recognition of his privilege.

He further alleged that the movable property upon which his privilege rested had been seized by the sheriff in the foreclosure of the mortgage held by the Hibernia National Bank; that his privilege primed the bank's mortgage upon the proceeds of the movables seized; and that to render the rights he claimed effective and available, it was necessary there be a separate appraisement and separate sale of the movables, apart from the land. He prayed accordingly, and an order issued for the separate appraisement and sale.

He also prayed to be paid by preference out of the proceeds of the movables.

The mules were appraised at $1900 and the other property embraced in the intervention at $703.50.

The defense against the demand is that the movables in question had been attached to the Sarah plantation for some time as part of its equipment and were so attached when the property was sold by Jos. Weil (the bank's transferror of the mortgage notes) to the Sarah Planting and Refining Company. It is averred that the same were included in the sale made by Weil to the Company, and in the mortgage retained to secure the purchase price—all to the knowledge of the third opponent. Furthermore, that they were upon the plantation, and sold as part thereof, at the antecedent sheriff's sale at which Weil had purchased—also to the knowledge of opponent.

It is, therefore, claimed that the latter is estopped to now set up ownership in himself.

There was judgment below in favor of the third opponent, in accordance with the prayer of his petition, and from this judgment the Bank appeals.

The conclusion we have reached is, this judgment is correct.

The issue is one of fact. We think the evidence adduced establishes

that George B. Kimbro, the brother of the third opponent, purchased the nineteen mules from the Marx Levy heirs as early as February 1897; that he gave therefor his promissory note, dated February first of that year; that this note passed into the hands of Jos. Weil, who bought the Sarah plantation (then known as "Eldorado") from the Levy heirs; that from Weil it passed to Pearce & Canty, when he sold the plantation to the latter in April 1897; and that the note was afterwards taken up by Kimbro. It may not have been taken up by payment in cash, but was taken up by means of the holders of the note becoming indebted to Kimbro and in compensation and satisfaction of the debt surrendering the note to him.

At the time the Levy heirs sold the mules to Kimbro, they also leased him the plantation for a term of three years This lease was duly recorded in the conveyance records of the Parish. Kimbro went into possession, employing John E. Kimbro as manager and using the mules in the cultivation of the plantation.

When, therefore, Weil purchased the place from the Levy heirs, Kimbro was in possession under his recorded lease. So, too, he was in possession under his lease, and continued to be, when and after the place was sold by Weil to Pearce & Canty on terms of credit with mortgage retained.

The latter went into insolvency and the plantation was seized under Weil's mortgage and vendor's privilege. At the sale which followed, Weil purchased and immediately sold the property at private sale to the Sarah Planting and Refining Company, which was organized at that time. This sale was on credit, and the notes thereof subsequently passed into the hands of the plaintiff Bank.

George Kimbro having thus acquired the ownership of the mules and the same being in his possession, transferred the same to his brother Jno. E. Kimbro, third opponent herein. This sale and transfer was in settlement of an indebtedness due by George B. Kimbro to his brother on account of services rendered by the latter as manager for the former of the plantation. He was unable to pay him in money "on account of short crops and poor prices," and that is why the mules were given to him in payment. A pre-existing debt due by a transferror of property to his transferree is sufficient to support the transfer. 51 La. Ann. 222.

The mules were at the time in possession of Jno. E. Kimbro as manager for his brother. Thereafter they remained in his posession as

owner until he sold them to the Sarah Planting and Refining Company in February 1899.

All the parties connected with the Sarah Company recognized the Kimbros as owners of the mules and other movable property claimed in the third opposition. Weil, too, did so, for in February 1898 we find the same included in the terms of an act of pledge and pawn which he took from George B. Kimbro for and on account of advances made and to be made to enable the latter to make a crop in that year.

Jno. E. Kimbro testifies he bought the mules from his brother in the fall of 1897. The brother places the time at a later period. We do not think the discrepancy sufficient to materially weaken the case of the third opponent. In the negotiation with his brother which resulted in the transfer of the mules, the latter were taken at the price of $1300. Five hundred dollars of this was to be considered as cash—that much being due him as balance on account of his services as manager for 1897. The remainder, he testifies, "was to be paid the following year, either in cash, or by my services."

The other movable property mentioned in the third opposition originally belonged to Jno. E. Kimbro. He had not acquired it from his brother, but from other parties, and the same remained his and in his possession until he sold it to the Sarah Company.

The plea of estoppel does not apply against the third opponent. He was no party to any of the acts of conveyance, mortgage or pledge upon which estoppel is predicated. Their recitals cannot be held to affect his rights. Nor do we think there is any impediment to his claim in the nature of estoppel by conduct. Such an estoppel arises when the party pleading it has been misled by the action, or the omission to act, of the other party at the proper time, and was thereby himself deceived into doing something to his detriment which otherwise he would not have done.

Judgment affirmed.

## On Rehearing.

PROVOSTY, J. Further consideration of this case has convinced us that the plea of estoppel should be maintained, in so far as the mules and those of the agricultural implements that were included in the Weill vs. Pearce & Canty seizure are concerned. These mules and implements were seized, and were adjudicated to Weill as immovables by destination on the plantation; and as such passed with the plantation

in the sale by Weill to the Sarah Planting and Refining Company, becoming thereby subjected to the vendor's privilege and special mortgage reserved by Weill on the plantation to secure the price of the sale, which is the vendor's privilege and special mortgage that the bank is now foreclosing. If the opponent stood by, and without protest suffered these movables to be thus sold and mortgaged, he is estopped from contesting the mortgage, as against one who has acquired the mortgage claim in good faith and in reliance on the record. It is hornbook law that one who stands by and without protest suffers his property to be sold to an innocent purchaser, is estopped from gainsaying the title of the purchaser. This principle applies with even greater force to one who stands by and without protest suffers his property to be mortgaged to secure notes which he knows are to become instruments of commerce; he is estopped from gainsaying the mortgage as against the innocent holder of the mortgage notes. Especially is he estopped if he has not simply stood by without protest, but actually been a party to the arrangement in execution of which the mortgage has been created. Am. & Eng. Ency. (New Ed.), Vol. 11, pp. 421, 424, 427, 430, 431; 5 R. 523; 30 Ann. 1251; 45 Ann. 307, 321; 48 Ann. 18.

We think that the opponent not only stood by quiescent while his property was being sold and mortgaged, but actually consented to the proceeding. His brother, George Kimbro, was questioned, and he answered as follows:

"Question—At the time Weill seized Sarah plantation and advertised it for sale in the spring of 1898, did you file any opposition to that sale, claiming these mules?

"Answer—No, I made no opposition. My reason for this is that we had bought the property at private understanding before the sale, and the sale was going through only as to give the title."

The existence of this *private understanding* is not disproved by other testimony in the record; on the contrary, everything goes to show that there must have been some understanding. Otherwise, the quiescence of the opponent would be inexplicable. But the bank was not a party to this *private understanding,* and had no knowledge of it, and is not bound by it; and having acted on the faith of the record, can hold opponent to the verity of this record, in the making of which he participated.

The estoppel applies only as to the implements that were embraced in the Weill vs. Pearce & Canty seizure; but while the testimony leads us

Richard vs. Drainage District.

to believe that not all the implements for which claim is now made were thus included, it does not enable us to determine which of these implements were and which were not included. In the interest of justice we think that the case should be remanded for further trial on this point.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court herein be set aside; and that the opposition herein be dismissed, in so far as the mules are concerned; and that the case be remanded for further trial, in so far as the agricultural implements are concerned, with instructions to the lower court to give judgment in favor of the opponent for those of the implements that were not included in the sale in the matter of Weill vs. Pearce & Canty, and in favor of the Hibernia Bank for those of the implements that were thus included; and that the opponent pay the costs of this appeal; and that the costs of the lower court be paid out of the proceeds of the sale or by the opponent accordingly as the opponent shall succeed or not in his opposition, in part or in whole.

BLANCHARD, J., dissents, holding to the view presented in the original opinion of the court.