BREAUX, C. J.
At a foreclosure sale, the Dibert, Bancroft & Ross Company, Limited, claimed a vendor’s privilege for balance due on a cane crusher, two mill roller shells, and an engine, having sold them to the Knoll Planting & Manufacturing Company for the price of $9,200, upon which there was a balance due of $6,900, secured, as it alleged in its intervention, by a vendor’s privilege. The firm alleged in its petition of intervention that this machinery was easily identifiable, and that it was easily separable from the other machinery of the C. F. Knoll Planting & Manufacturing Company.
Prior to the foreclosure sale, the Dibert, Bancroft & Ross Company obtained an order for an appraisement of the property on which it claimed a privilege, and for a separate sale from the other property, which was about to be sold in foreclosure proceedings.
The property was appraised together: One crusher and engine complete, one roller shell and one roller complete with shaft, $9,200.
The land seized was sold, and brought the price of $92,000. The pieces of machinery on which the Dibert, Bancroft & Ross Company claimed the vendor’s privilege were adjudicated to it for $6,133.35, two-thirds of its appraised value.
There was no other bidder on this property.
The Hibernia Bank & Trust Company answered the intervention, and contested the right of the Dibert, Bancroft & Ross Company to a vendor’s privilege. Its denial is based upon the fact, as it alleged, that the property was owned by the mortgagor, the Knoll Planting & Manufacturing Company, and that the machinery had become part of the immovable property of the Knoll Planting & Manufacturing Company by destination. It alleged in the alternative that, if the Dibert, Bancroft & Ross Company had a privilege on the crusher, it had no privilege on the mill shells.
[1] The admitted facts are that the crusher and the engine and their appurtenances were placed upon a foundation on the property mortgaged in defendant’s factory, secured by bolts passing through the bed plates of the crusher and engine through holes left in the bed plates for that purpose; the bolts run through holes in the foundation of the machinery. These bolts are provided with removable nuts on each end, rendering it possible to remove the crusher and engine by unscrewing the nuts from the bolts and lifting them from the foundation.
The cane roller shells claimed by the intervener is the first item to which we have given thought. These shells were fastened to the mill shaft and thereby changed into cane rollers. The shaft and the machinery belonged to the defendant. It follows that it became part of its property. The intervener took out the old shells on these shafts (they were worn out) and put in the new, on which it now claims the privilege. To accomplish this repair, it was necessary to *245 press in the shaft into the aperture of the shell by hydraulic pressure.
The intervener took possession of the old shells, and as is usual when repairs are made, it became the owner of the scraps, worth only as scraps, it is stated, between $8 and $10 a ton, which is equivalent to little or no value.
The shafts are 12 feet long and 15 inches in diameter. This shaft has a crown wheel at one end. To now remove the shell, the shell, crown wheel, and shaft would have to be shipped to the city of New Orleans and be there removed by hydraulic pressure. It is not possible with any degree of certainty, without great risk of breaking the shell, to take it off on the plantation. Even by hydraulic pressure, it sometimes happens that they are broken in taking them off.
These shells are six inches thick at their thinnest part, made of cast-iron composition.
The roller shells give rise to a question which was decided in Swoop v. St. Martin, 110 La. 237, 34 South. 426. In that case the court held that by the use made of the shells (that is, by attaching them to a shaft) they had ceased to be a shell and had become a part of the machinery.
Eor the same reason, in the case now before us for decision, the shells become a part of the machinery.
There is no good reason for taking the machinery apart so as to render it subject to a vendor’s privilege. The identity of the shells was entirely lost. The cane roller was not subject to a privilege, and the shells had become a part of the cane roller. They have lost their identity (as property subject to a vendor’s privilege) and the creditor has lost his privilege.
[2] We have noted that this property was appraised in globo under the order of the court. The law requires that the property shall be appraised, and that the appraisement shall serve, as the basis of calculation in determining the amount to which the third opponent, who claims the privilege, is entitled. That is, the opponent recovers a proportionate payment from the proceeds of the , sale of the whole.
The property having been appraised in globo, there is no appraisement of the remaining machinery; no amount upon which it is possible to determine the proportionate share or the proportionate part to which the present opponent is entitled.
The shells on the rollers had a value. The amount we do not know, and are not authorized to guess. From any point of view, there is no appraisement possible. It has been repeatedly decided that without the appraisement there is no privilege.
If a vendor permits machinery to be sold without legal appraisement, he loses his privilege. Hoy v. Peterman, 28 La. Ann. 290; Lambert v. Saloy, 37 La. Ann. 3.
There is another objection equally as fatal. The property on which plaintiff claimed the privilege’ was sold separately from the whole property mortgaged.
A creditor who claims a vendor’s lien on machinery, and who files an intervention and third opposition, may have the machinery separately appraised, but not separately sold. The article of the Code is plain enough. The foregoing is almost a literal reproduction of it.
Read as we may, it does not give a right to a separate sale.
The vendor is paid to the amount of the appraisement on the land and the other to the amount of the appraisement of the building. C. C. arts. 3267, 3268.
“In that form of proceeding the application for a separate sale was properly refused.” Walburn-Swenson Co. v. Darrell, 49 La. Ann. 1044, 22 South. 310.
We have given further consideration to intervener’s claim to the other property it claims, the crusher and the engine. There *247 would be great difficulty in taking out tbe crusher from the mill, and that gives rise to a very serious question. As to the engine, it does not seem to us that it would be as difficult. But to that part of the property the claim is not proved.
Be that as it may,' the property was not appraised separately, and therefore it is not subject to a privilege.
Eor reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed. It is ordered, adjudged, and decreed that intervener’s demand is rejected and intervener is condemned to pay the costs in both courts.