LAND, J.
Judgment was rendered in the court below in favor of the plaintiff for the sum of $12,395, with 8 per cent, interest’ thereon from September 20, 1912, until paid, with recognition of plaintiff’s vendor’s privilege on a Corliss engine and a cane crusher and appurtenances (with the exception of the housing .caps and hydrauling pipes), sold by the plaintiff to the defendant as per contract of date October 14, 1912, executed in the city of New Orleans. Defendant’s -receiver has appealed, and relies for reversal on two propositions, to wit: First. That the machinery in question had been previously purchased by the defendant from the plaintiff in the state of Georgia, and had been shipped by rail to the defendant, and a part of the same had been delivered on the plantation of the defendant, and the remainder was in New Orleans in transit, when a sale and resale was made in said city for the sole purpose of creating a vendor’s privilege on said machinery, and that no such privilege existed under the laws of the state of Georgia. Second. That if a vendor’s privilege was created by said resale it was extinguished by the subsequent immobolization of said machinery by reason of its having become a permanent part of defendant’s sugar house.
[1,2] The original contract for the machinery was made in Atlanta, Ga., on July 3, 1912, and the price was fixed at $10,700, payable, $1,337.50 in one week, a like sum upon delivery of shipping documents, and the balance in three notes for $2,675 each, maturing February 1, 1913, February 1, 1914, and *182 December 1, 1914, respectively. The contract contained the following stipulations:
“The title and right of possession to the machinery held hereunder, and the right to use the.same under patents held by manufacturers or other licensees thereunder shall not pass from us to the purchaser until all payments hereunder (including deferred payments) shall have been fully made in cash, and the machinery covered hereunder shall remain our personal property, whatever may be its location, position or mode of attachment to the realty or property, until paid for fully in cash, and the purchaser agrees to perform all necessary acts to pex-fect and insure retention of title of said machinery to us.”
“If default is made in any of the payments in manner or form or at the times herein specified (time of payment being of the essence of the contract), we shall have the right to retain (as liquidated damages) any and all partial payments which have been made, and shall be entitled to immediate possession of said machinery, and shall be free to enter the premises where same is located and remove it as our property.”
It appears that on July 4, 1912, a similar contract was made in reference to a sale and delivery of a complete equipment for the operation of Cecelia Company’s .First and Second “Whitney mill” by hydraulic pressure, for the price of $3,216.
. An agreement between the parties was entered into and executed in the city of New Orleans on October 14, 1912, in which the defendant company acknowledged that it had failed to comply with its obligations under both contracts, and recognized the contract right of the plaintiff to retake all of the machinery, the location of which was thus described:
“The largest part of which is presently located upon the cars in the city of New Orleans, and the smallest part of which is upon the premises of the Cecelia Company in St. Martin’s parish, state of Louisiana, but not 'affixed to any real estate or forming part thereof.”
The. agreement states that the parties were willing to compromise their differences and to readjust their said contracts, and recites that the defendant surrendered and delivered to the plaintiff all of the machinery referred to in said contracts, and that the plaintiff sold, transferred, and delivered unto the defendant all of the same for the price of $14,-634.50, of which the sxirns of $1,739.50 and $500 were paid in cash, and the remainder of $12,395 was settled by the notes of the defendant company. The agreement further recites, that, in addition to the lien and privilege granted by law to the vendor upon and against the property sold, the defendant pledged two bonds of Cecelia Sugar Company, Limited, for $500 each, and eight notes of various parties, aggregating $1,-752.25.
The evidence shows that, on October 12, 1912, the engine was on the cars at defendant’s plantation.
That the defendant had defaulted on the payments called for by the contract made in Atlanta, Ga., is not denied. Thereupon, under the very terms of said contracts, the plaintiff became “entitled to immediate possession of said machinery,” wherever located.
These contracts were valid in the state of Georgia, and wherever the common law prevails.
It may be that under our jurisprudence, the plaintiff could not have recovered the property as owner in the courts of Louisiana. See Barber Asphalt Co. v. St. Louis Cypress Co., 121 La. 152, 46 South. 193. But plaintiff certainly had the right to sue to recover the unpaid purchase price, or to dissolve the sales for nonpayment of the price. Civil Code, arts. 2046, 2047, 2561-2564.
The parties, however, agreed to compromise their differences, and to make a new contract of sale differing in many material conditions and particulars from the original contracts. There was no fraud connected with the transaction, and no rights of third persons were involved.
“All things * * * not fox-bidden by law, may legally become the subject of, or the motive for contracts.” Civil Code, art. 1764.
In Gay & Co. v. Crichlow & Donelson, 29 La. Ann. 123, the court said:
*184 “We see no reason to doubt the bona files of the transaction. True, they bought the mules with the intention of reselling them at once to the defendants and thereby securing themselves by a vendor’s privilege. We see nothing illegal or immoral in this transaction. On the contrary, we think it was a legitimate business arrangement. When not illegal or immoral, a contract is a law between the parties. * * * As between the parties no delivery is necessary. Third persons alone can take advantage of its absence.”
Delivery of movables takes place—
“even by the bare consent of the parties, if the things cannot be transported at the time of the sale, or if the purchaser had them already in his possession under another title.” Civil Code, art. 2478.
Delivery and redelivery were acknowledged by the parties, and creditors of neither have complained.
In the case of Terry and Husband v. Executrix, 50 La. Ann. 1040, 24 South. 128, the sale and resale were simulations concocted for the purpose of binding the paraphernal property of a married woman for the debt of her husband.
The case of McIlvaine & Spiegel v. Legare & Godchaux, 36 La. Ann. 359, presents an example of a common-law contract of sale of machinery, which was subsequently modified so as to convert it into a Louisiana contract, conferring a vendor’s privilege.
[3] The defense that the vendor’s privilege has been extinguished by the alleged immobolization of the engine and crusher is without merit. The evidence shows that these articles of machinery may be readily removed without injury to themselves or any material damage to the plant. In Carlin v. Gordy, 32 La. Ann. 1288, the court, speaking through Fenner, J., said:
“The privileges resting on movables are, in some cases, affected by the changes which may take place in the nature or destination of the things. But such changes must be so radical as to create a new species of thing and destroy that species which originally existed — as, to use the illustration of Cujas, when a pine or cypress log is converted into a ship, or when wool is converted into a garment, or when marble is made into a statue.”
This doctrine was applied to the machinery in a sugar house in the recent case of the Receivership of the Augusta Sugar Co., Ltd., 64 South. 870, 134 La. 971.
We reaffirm that decision as in accord with our former jurisprudence on the same subject-matter. As was said in Carlin v. Gordy, supra, referring to the machinery in. a sugar house:
“Had their destination as immovables been effected in such manner as to preclude their detachment without injury to independent rights of ownership in the soil or structures, the privilege might have been subjected to such limitation in its * * * separate sale or removal of the thing subjected to it.”
In the same case, the court quoted Troplong, to the effect that the destination of movables by the purchaser is imperfect and subordinate to the rights of the vendor. Article 3227 of the Civil Code provides that the vendor’s privilege for the price continues as long as the movable “still remains in the possession of the purchaser.” In the ease of machinery, this privilege would be practically worthless if the purchaser could extinguish it by fastening the machine to a mill, or other structure, or by so inclosing the machine as to leave no opening for its removal. Our jurisprudence is otherwise, and recognizes the vendor’s privilege on a machine as long as it remains a machine. Machinery, like furniture, is a separate entity, and usually forms no part of the structure of the building in which it may be located.
Judgment affirmed.
MONROE, C. J., dissents. O’NIELL, J., takes no part.