(68 South. 86)

No. 21057.

LEGENDRE v. McCALL'S ESTATE.

Intervention and Opposition of PUTNAM & NORMAN.

(March 22, 1915.)

*(Syllabus by the Court.)*

SALES ☞315—PRIVILEGE OF SELLER—MORTGAGE—THIRD OPPOSITION.

The unpaid vendor of mules attached to a plantation, which has been specially mortgaged, has the legal right to enforce his privilege by the separate sale of the animals, not only in a direct action, but by third opposition when the plantation has been seized by mortgage or other creditor.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 885–889; Dec. Dig. ☞315.]

Appeal from Twenty-Seventh Judicial District Court, Parish of Ascension; C. T. Wortham, Judge.

Action by James Legendre, executor, against the estate of Richard McCall, wherein Putnam & Norman filed intervention and third opposition. From the judgment, plaintiff appeals. Affirmed.

James Legendre, of New Orleans, in pro. per. Hall, Monroe & Lemann, of New Orleans, for appellees Putnam & Norman.

LAND, J. The case before us is stated by counsel for plaintiff and appellant, as follows:

"Under a writ of seizure and sale issued herein at the instance of James Legendre, executor of the estate, of Widow E. Legendre, the sheriff of Ascension parish took into his possession and advertised for sale the McManor plantation, together with the agricultural implements thereto attached, mules, etc.

"Putnam & Norman intervened in the executory proceedings and asked for an order directing the sheriff to sell, separately and apart from McManor plantation, 8 mules out of 45 seized by the sheriff under said writ. The 8 mules had been purchased by Richard McCall from Hudson & Co., subsequent to the granting of the mortgage which formed the basis of the executory proceedings herein, and Hudson & Co. for value assigned its rights to Putnam & Norman.

"The order for a separate sale was granted by the district judge. The request of the seizing creditor that the order be recalled was denied. Thereupon he entered his written protest against the separate sale of the mules, above described, and his protest was read by the sheriff prior to the sale.

"The sum realized by the sheriff under said writ amounts to $37,150, $1,150 of which represent the proceeds of the sale of the 8 mules. Appellants contend that the district judge erred in directing the sheriff to sell, separate and apart from the McManor plantation, the 8 mules which formed part of it, and which were subject to the mortgage of the seizing creditor; that, said sale being illegal, no legal consequences follow; the proceeds of sale of said mules are subject to the mortgage of the seizing creditor, and are to be paid to him, the property mortgaged having brought an amount insufficient to pay the mortgage resting on it. The district judge, in a lengthy opinion, decided the issues involved adversely to the seizing creditor. Hence this appeal."

Opinion of the District Judge.

The judge states that only six of the mules remained upon the plantation, and that they were appraised and sold separately for $1,-150; that the plaintiff admitted the opponent's vendor's privilege, and that his only contention was that the plantation and mules should have been separately appraised, and then sold as an entirety, and the proceeds

of the sale divided in proportion to the appraisements; and that, as this was not done, plaintiff was entitled to the proceeds of the mules.

After stating the case, the opinion continues as follows:

"Plaintiff relies on article 645 of the C. P., providing that the sheriff cannot seize working mules or implements separately from the land to which they are attached. He contends that the mules are immovable by destination, and were included in the seizure of the plantation; that a mortgage is indivisible; and that the mortgage creditor cannot be compelled to seek payment out of part only of the mortgaged property.

"There is not the slightest doubt about the correctness of these general principles. But plaintiff admits that opponent had a privilege on the mules at the time of the sale. * * * The mules, although placed on the plantation for its service by the owner thereof, remain movable quoad, the rights of the unpaid vendor. Shelly v. Winder, 36 La. Ann. 182. This answers every argument of the plaintiff, because a mortgage can attach only to immovables, and, while it does attach to the mules in this case, it is imperfect as to them and subordinated to the vendor's privilege. 36 La. Ann. 184. This being true, a separate sale is the only method by which the vendor could secure its privilege. If it actively permitted the mules to be sold as a part and portion of the plantation, such action would amount to a waiver of its privileges, for it would be an admission that even as to it the mules had become immovable and subject to the mortgage."

The judge also cited In re Receivership of Augusta Sugar Co., 134 La. 973, 64 South. 870; Pratt & Co. v. Cecilia Co., 135 La. 179, 65 South. 101; Hibernia Bank v. Sarah, 107 La. 650, 31 South. 1031; Walburn-Swenson v. Darrell, 49 La. Ann. 1044, 22 South. 310; and Carlin v. Gordy, 32 La. Ann. 1285.

In further support of the proposition that the mules were properly sold separately, the judge cited Monroe v. Johnston, 51 La. Ann. 470, 25 South. 383; Payne v. Buford, 106 La. 83, 30 South. 263; and Civil Code, art. 3228.

### Plaintiff's Contention.

(1) "Mules purchased by the owner of a plantation and placed thereon for its cultivation form part of it, and are immovable by destination, and are affected by a mortgage which antedates their purchase. They form part of the plantation and are included in the seizure thereof by a mortgage creditor. Succession of Dougherty, 32 La. Ann. 412; Williamson v. Richardson, 31 La. Ann. 685; Villere v. New Orleans Pure Milk Co., 122 La. Ann. 733, 48 South. 162."

(2) "A mortgage is a real right. It is in its nature indivisible and prevails over each and every portion of the immovable subject to it. The holder of the mortgage cannot be compelled to seek payment out of part or portion of the property mortgaged. His right is entire. A separate sale of the property mortgaged would be a dismemberment of the right of mortgage. Lallande v. McRae, 16 La. Ann. 194; Bagley v. Sheriff, 10 Rob. 45; Hughes, Adam, v. Patterson, 23 La. Ann. 680; Varnado v. Thompson & Co., 129 La. 15, 55 South. 693; Pepper v. Dunlap, 16 La. 163; Walton v. Lizardi, 15 La. 588; Groves v. Sentell, 153 U. S. 465, 14 Sup. Ct. 898, 38 L. Ed. 785; Troplong, Hypothetique, vol. 2, p. 215; Laurent, vol. 30, pp. 158–177."

(3) "The sheriff cannot seize the agricultural implements and working cattle separately from the land to which they are attached. C. P. art. 645."

(4) "A creditor who claims a vendor's lien on machinery seized in foreclosure proceedings, and who files an intervention, may have the machinery separately appraised, but not separately sold. Hibernia Bank v. Knoll Pltg. Co., 133 La. 242, 62 South. 663."

(5) "In executory proceedings, a creditor who claims a vendor's privilege on property covered by the mortgage is entitled to a separate appraisement but not to a separate sale. The property mortgaged must be sold in its entirety. Walburn-Swenson Co. v. Darrell, 49 La. Ann. 1044, 22 Sou'h. 310; Hall v. Hawley, 49 La. Ann. 1046, 22 South. 205."

(6) "Workmen and others having a privilege on improvements erected on property mortgaged cannot cause such improvements to be sold separately from the ground on which they stand. They must be sold together, in order that the highest price may be obtained, to be divided by the parties according to appraisements. McDonough v. Le Roy, 1 Rob. 173; Jamison v. Barelli, 20 La. Ann. 452."

### Opinion.

The first proposition of the plaintiff is not disputed. It is contended by opponent that the second and third propositions are not applicable to the case of a vendor's privilege on mules seized on the mortgaged premises; that the fourth proposition is based on obiter dicta; that the fifth is not supported by the cases cited; and that the sixth has no application to mules.

As opponent is conceded to have had a ven-

dor's privilege on the mules, superior in rank to the mortgage of the plaintiff, the only question in the case is whether the opponent had the right to have the animals separately appraised and separately sold. In the case of Payne & Joubert v. Buford et al., 106 La. 87, 30 South. 263, where the plaintiffs claimed a vendor's privilege on machinery, which had been sold with the plantation, at sheriff's sale, the court said:

"Undoubtedly, plaintiffs had the vendor's privilege upon the machinery purchased from them and put in the sugar house. * * * But when, later, the plantation, and everything upon it, immovable by destination, was seized under judgments obtained against the owners and advertised for sale, and plaintiffs neglected to take timely action to protect their privilege as vendors of the machinery, they lost the same. Thus, they allowed the things upon which their privilege rested 'to be sold confusedly with a mass of other things.' C. C. art. 3228."

"They should have demanded a separate appraisement and separate sale of the machinery. It is by reason of sleeping on their rights in this particular that a loss is entailed upon them. See Citizens' Bank v. Maureau, 37 La. Ann. 857; Scannell & Lafaye v. Beauvais, 38 La. Ann. 217; Shakspeare, Smith & Co. v. Ware, 38 La. Ann. 570."

We note that the plantation and machinery referred to in the Payne & Joubert Case were seized and sold to satisfy a special mortgage and vendor's privilege.

The ruling in the Payne & Joubert Case is supported by the case of Carlin v. Gordy, 32 La. Ann. 1288, where the court held that:

"Inasmuch as the mill and machinery can be detached and removed from the plantation without injury to the soil or structures, the said vendor has the right to seize and sell them separately from the land, notwithstanding a subsequent special mortgage on the plantation."

In Walburn-Swenson & Co. v. Darrell, 49 La. Ann. 1044, 22 South. 310, the plaintiffs were the unpaid vendors of machinery attached to defendants' plantation. Another creditor of defendant, with mortgage on the plantation, caused it to be seized for the payment of the mortgage debt. The plaintiffs applied to the district court for the separate appraisement and sale of the machinery. The court refused the order for the separate sale. Thereupon the plaintiffs enjoined the sale of the machinery under the writ of the mortgage creditor, and, from the judgment dissolving the injunction, plaintiffs appealed to the Supreme Court, which reversed the judgment and ordered that the injunction of the plaintiffs be made perpetual with costs. In Monroe B. & C. Ass'n v. Sheriff, 51 La. Ann. 470, 25 South. 383, the same court held that:

"The unpaid vendor of machinery has the right to seize and sell the machinery, although it may have been attached to and become part of the immovable that is mortgaged."

In the opinion in the Walburn-Swenson Case, the court differentiates between a privilege on a movable incorporated with an immovable, and a privilege on a movable not so incorporated, or which can be removed without injury to the immovable; and states that in the first case the privilege cannot be enforced by a separate sale of the movable, and in the second case the privilege may be enforced by the seizure and sale of the movable under a separate writ. As the vendor's privilege is lost when a movable is incorporated with an immovable, the first proposition has no relevancy to the issue under discussion.

The court further said:

"As well as we can gather from the brief statement of facts and the record, the application of the privilege creditor to the lower court was not made until the mortgage creditor had seized, and but an hour or two before the sale. Then the relief sought was a separate sale under plaintiffs' writ. In that form of proceeding the application for the separate sale was properly refused. But, when refused, the creditor stood on his right under his judgment. We do not understand he lost that right by the refusal of that other relief to which he conceived himself entitled. It is urged, too, by defendant, that after the mortgage creditor seized the privileged creditor is restricted to a separate appraisement and his share in the proceeds of sale of the entirety. The authorities cited by the defendant in this connection (McDonough v. Le Roy, 1 Rob. 175; Cordeville & Lacroix

v. Hosmer, 16 La. 591; City of Baltimore v. Parlange, 25 La. Ann. 337) do not, we think, sustain defendant's contention on this point."

In the case just cited, the creditors, claiming a vendor's privilege, had seized under a judgment obtained by them, and their right to sell regardless of the mortgage was maintained by the court.

In Hall v. Hawley, 49 La. Ann. 1046, 22 South. 205, the same court, through the same organ, said:

"There is great force in the proposition that when the privilege creditor asserts his right, by third opposition in the suit of the mortgage creditor, on the movable attached to the immovable, he is restricted to a separate appraisement, and his proportionate share of the proceeds. C. C. art. 3268; McDonough v. Le Roy, 1 Rob. 175; Carrollton Bank v. Tayleur, 16 La. 491 [35 Am. Dec. 219]; Jamison v. Barelli, 20 La. Ann. 452; Walburn-Swenson Co. v. Darrell, 49 La. Ann. 1044 [22 South. 310]."

The article and two of the cases cited refer to liens on buildings, the third case does not refer to privileges, and the fourth has already been considered.

In Hall v. Hawley, the plantation was seized under the writ of the first mortgage creditor. The defendants, claiming a vendor's privilege on certain machinery attached to the sugar house, obtained an order for the separate appraisement and sale of the machinery. At the sheriff's sale the defendants purchased the machinery, and the plaintiffs purchased the plantation. Plaintiffs thereupon enjoined the defendants from removing the machinery. The court, after making the statement supra, held that the mortgage creditors by permitting the separate sale of the machinery, and by purchasing the other portions of the plantation, had precluded the sale of the plantation in its entirety, and were therefore not entitled to the injunction. In the case at bar the plantation and the machinery were sold separately, and, while the plaintiffs protested, they did not enjoin the separate sale, as they should have done as

suggested in Hall v. Hawley. It is evident that, where a plantation and machinery thereon have been sold separately, they cannot thereafter be sold as an entirety.

The quotation supra from the opinion in that case was not necessary for its decision, and is therefore not authoritative.

In the later case of Payne & Joubert, cited, supra, the court said:

"They should have demanded a separate appraisement and separate sale of the machinery. It is by reason of sleeping on their rights in this particular that a loss is entailed upon them."

If, as held in that case, a judicial sale of a plantation and machinery as a whole extinguishes the vendor's privilege on the machinery, then a separate sale of the latter becomes a legal necessity. And as the vendor's privilege is lost when the thing upon which it rests is sold confusedly with a mass of other things (C. C. art. 3228), the dictum in Hall v. Hawley, supra, is clearly erroneous as an abstract legal proposition.

The case of Hibernia Bank & T. Co. v. C. F. Knoll Planting & Mfg. Co., 133 La. 242, 62 South. 663, is cited by counsel for the plaintiff. In that case the unpaid vendor of a certain sugar-house machinery obtained an order for a separate appraisement and sale of the machinery. The separate articles of machinery were appraised together, at $7,200. The land was sold separately for the price of $92,000, and the machinery was sold separately for the price of $6,133.35. The court found that certain parts of the machinery had been so incorporated with other machinery as to have lost its identity, and as to such parts the vendor's privilege had been lost. The court found that other parts of the machinery were subject to the vendor's privilege, and as to such parts said:

"The property having been appraised in globo, there is no appraisement of the remaining machinery; no amount upon which it is possible to determine the proportionate share or the proportionate part to which the present opponent is entitled."

While there are, in the opinion in that case, expressions which give some support to the contention of the plaintiff, it is clear that the court did not hold that the machinery could be separately appraised but not separately sold, as stated in plaintiff's brief. On the contrary, the machinery was separately appraised and separately sold in accordance with the decision in the Payne-Joubert Case, 106 La. 84, 30 South. 263, and no questions of the regularity of such proceedings were raised by counsel.

In Shelly v. Winder, 36 La. Ann. 184, the court said:

"The judgment appealed from resolved the sale of the plantation, but recognized and enforced Levy & Co.'s privilege on the mules sold.

"The appellant assigns error in the judgment on two grounds: (1) That the vendor's lien on the movables sold was extinguished by their conversion into immovables by destination. (2) * * *

"Certain French authorities are quoted in support of the first proposition, but others are of a contrary opinion. This court has adopted the view of Troplong to the effect:

"That the purchaser of such movables as mules, agricultural implements, etc., cannot affect the rights of the vendor thereof by impressing on them the purely metaphysical quality of immovables. The thing sold subsists in all of its parts just as it was when sold, without any change in its nature, or otherwise, except in its destination, and such destination is considered as imperfect and subordinated to the rights of the vendor. Trop. Priv. & Hyp. No. 113; Carlin v. Gordy, 32 La. Ann. 1285; Gary v. Burguieres, 12 La. Ann. 227; Bergeron v. Patin, 34 La. Ann. 535."

It is well settled that the unpaid vendor of movables may proceed by separate action, and seize and sell the things upon which he has a privilege to pay and satisfy the balance due on their purchase price. As the vendor's privilege on mules ranks any mortgage that may be imposed on the estate, there is no reason in law or in equity, why he should not be permitted to have the property separately appraised and sold, in the proceedings for the foreclosure of the mortgage. Why drive the vendor to a separate action to enforce his privilege, when the things on which he has a lien are already under seizure and about to be sold?

In such a case the remedy of the vendor is by third opposition. Code of Practice, arts. 401, 402.

A proceeding by third opposition cannot in logic or reason deprive the vendor of his superior right to have the movables subject to his privilege separately appraised and sold for the purpose of paying the balance due on their purchase price.

The legal fiction that movables, such as mules, wagons, implements, etc., for the service of a plantation constitute parts of the realty, has never been enforced against the unpaid vendor, who has seasonably asserted his superior rights. The mules in question being movables in fact, and in law quoad the unpaid vendor, whose privilege ranks the special mortgage on the premises, the existence of such mortgage cannot affect the right of the vendor to have the movables separately appraised and sold.

Under plaintiff's contention, the unpaid vendor would not receive the price of the mules, but a proportionate share of the price of the plantation in its entirety.

As the plantation was not appraised but sold for cash without the benefit of appraisement, there is no basis for a proportionate division of the proceeds of sale as suggested by the plaintiff. In our opinion, plaintiff's contention is bad in law, and finds no support in equity, as it would in many cases deprive the unpaid vendor of a large portion of the selling value of the movables subject to his privilege. It might well happen that such movables as mules, if sold separately, would bring their full market value, while the plantation, as whole, sold at forced sale, might bring only a small portion of its market value. Spoliation of the unpaid vendor would result in such contingency.

We are satisfied that the judgment below is correct.

In closing, we deem it proper to express our appreciation of the well-considered opinion of our learned brother below.

Judgment affirmed.

MONROE, C. J., takes no part.