No. 2161

Second Circuit

MONROE AUTOMOBILE & SUPPLY CO.

v. COLE

GAHAGAN, Intervenor

WILKINSON, Intervenor

(April 8, 1927. Opinion and Decree.)

(*Syllabus by the Court*)

1. Louisiana Digest — Things — Par. 5; Sales—Par. 311.

Movable property may, under some circumstances, become part of the realty in connection with which it is used, and by such use become itself immovable, so that the vendor's lien and privilege thereon is lost, even though such movable is not so broken up as to lose its identity.

**2. Louisiana Digest — Things — Par. 5; Sales—Par. 311.**

A large gasoline tank used in the construction of a filling station, which is buried beneath the ground, attached to the soil by and partially encased in concrete to hold it in place, and the surface of the soil under which it is buried covered over with reinforced concrete, becomes part of the real estate and loses its character as a chattel, and the vendor's lien thereon is lost.

**3. Louisiana Digest—Things—Par. 4.**

A gasoline tank used in the construction of a filling station, buried in and attached to the soil by concrete, is not an immovable by destination.

**4. Louisiana Digest—Things—Par. 4, 5; Sales—Par. 311, 321.**

A chattel which the owner of real estate adds or attaches to it for its use is immovable by destination and remains subject to the vendor's lien and may be sold separately from the realty to enforce the lien.

**5. Louisiana Digest—Things—Par. 4, 5; Sales—Par. 311, 321.**

An immovable by destination is not subject to removal and sale separated from the realty to which it is attached to enforce the vendor's lien if such removal will necessarily injure materially the immovable to which it is attached.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of, Red River. Hon. J. W. Jones, Jr., Judge.

Action by Monroe Automobile & Supply Company against I. C. Cole; W. W. Gahagan and W. T. Wilkinson, intervenors.

There was judgment for intervenors and plaintiff appealed.

Judgment amended and affirmed.

Nettles & Bethard; McHenry, Montgomery, Lamkin & Lamkin, of Monroe, attorneys for plaintiff, appellant.

S. R. Thomas, of Coushatta, attorney for intervenors, appellees.

John F. Stephens, of Coushatta, curator ad hoc for defendant.

ODOM, J. Plaintiff brought this suit against defendant, I. C. Cole, on promissory notes executed by him aggregating $846.33, representing the balance due on the purchase price of two Milwaukee Gas Stations and one Steel Gasoline Tank sold to Cole to be used in the construction of a filling station and garage which Cole was building at Coushatta, Louisiana.

Under proper allegations plaintiff was granted writs of sequestration and attachment, ordering the sheriff to sequester the articles sold and to attach other property owned by Cole.

Plaintiff asked for judgment on the notes and for recognition of its vendor's privilege on the chattels sold.

W. W. Gahagan and W. T. Wilkinson separately intervened in the suit, alleging that they were mortgage creditors of Cole to an amount far exceeding the amount of plaintiff's claim, and opposed plaintiff's privilege on the ground that the articles sold by plaintiff to Cole had become immovable by destination and by nature and that plaintiff's privilege thereon had become extinguished.

Upon trial the District Court granted judgment for plaintiff against Cole in the full amount sued for, but denied its claim for recognition of its privilege on the articles sold, and recognized the intervenors'

privilege as mortgage creditors upon said property to be superior in rank to any rights held by plaintiff.

The court also sustained the writs of attachment and sequestration.

Plaintiff alone appealed.

### STATEMENT OF THE FACTS

In the early part of the year 1923 the defendant, Cole, erected a brick garage and in connection therewith and as a part thereof a filling station.

The garage building proper is back some thirty or forty feet from the street, the filling station occupying the space between it and the street.

Cole purchased from plaintiff a large gasoline tank, about twenty-eight by thirty feet long and seven or eight feet in diameter, with a capacity of ten thousand five hundred gallons, together with two gas stations, all to be used as a part of the filling station outfit.

The gasoline tank was buried underneath the ground to the depth of about two feet under the surface and, in order to hold it in place, was set in concrete. It was not surrounded by concrete along its entire length but was so encased for some four or five feet in two places.

The tank was sunk about six feet from the footing of the wall of the garage proper and is under what is called the driveway, which consists, as we understand the testimony, of all the space between the garage building proper and the street.

This entire space called the driveway, with dimensions of thirty by forty feet,

underneath which the tank is buried, is covered over with reinforced concrete seven inches thick.

The gas stations are set in concrete in the driveway and are connected by pipes with air pumps which are buried along with the gasoline tank under the concrete surface.

Over this driveway and the gas station there is a shed or covering supported by brick columns, which shed extends from the garage building proper to the edge of the sidewalk.

The building of the garage and shed, the placing of the gas tank and gas station and the covering of the driveway with concrete was all done at one and the same time and as a part of the same enterprise.

The plaintiff did not record its contract of sale in order to preserve its vendor's privilege, nor did it record its claim as furnisher of supplies under the building contract laws of the state.

It is admitted that the mortgage given by I. C. Cole, the defendant, to W. T. Wilkinson, one of the intervenors, covering the lot of ground on which the filling station and garage are situated, together with all the improvements and appurtenances thereunto belonging, was executed, filed and recorded prior to the time that the tank and gas stations were placed on the property and put in operation; and further admitted that the vendor of the tank and gas stations knew at the time they were sold that they were to be placed in a new building, that was covered by the mortgages of both intervenors.

The mortgage held by the intervenor, Gahagan, was executed and recorded subsequent to the sale by plaintiff to Cole and subsequent to the date on which the property was put into the building, but it is admitted that Gahagan acquired the note in good faith prior to the filing of the suit by plaintiff.

## OPINION

The curator ad hoc appointed to represent Cole did not appeal from the judgment rendered against him. However, counsel for plaintiff concede that the court erred in granting a personal judgment against Cole. Cole was an absentee and was brought into court through attachment proceedings. The judgment against him is binding in rem only and will have to be amended in that respect.

The real contest is between the plaintiff and the intervening mortgage creditors, and involves the question whether the plaintiff, under the facts and circumstances disclosed, has lost its privilege on the property which it sold to Cole.

Counsel for plaintiff, in brief, state:

"We do not contend for a single moment that the gas stations and tank were not attached permanently, and did not become immovables by destination; but hardly anything is better settled than our jurisprudence that a vendor's privilege upon movables is not lost by their becoming immovables by destination."

And they cite a long list of authorities in support of that contention.

The real question in this case, however, is not whether the movables have become immovables by destination, but whether they have become merged into the immovable and have become so far a part of it as to lose entirely the character of movables.

If so, the vendor has unquestionably lost its right to assert its privilege thereon as against creditors who hold claims secured by mortgage on the realty.

No principle of law is more firmly established in our jurisprudence than that movables may, under some circumstances, become part of the realty in connection with which they were used and become by such use immovable, insofar as the vendor's right to assert a privilege thereon is concerned, even though such movables are not so broken up and are not so merged into the realty as to lose entirely their identity. ·

Swoop vs. Martin (Sarpy, Intervenor), 110 La. 237, 34 South. 426.

Hibernia Bank & Trust Co. vs. C. F. Knoll Planting & Manufacturing Co. (Murphy, Intervenor), 133 La. 697 (714), 63 South. 288.

Same case, 133 La. 242, 62 South. 663.

In re: Receivership of Augusta Sugar Co., Ltd. (Payne & Joubert M. & F. Co., Intervenors), 134 La. 971, 64 South. 870.

The question, whether a movable has lost its identity as such as regards the vendor's right to assert his privilege depends, of course, upon circumstances.

A chattel need not be so broken up or so merged into the realty that it cannot be identified, in order that it may lose its character as a movable and may become realty insofar as the vendor's right to claim his privilege is concerned. Doors, window sash and blinds could easily be

identified by the vendor, but he loses his privilege on them when used in the construction of a building, even though susceptible of identification.

In the case at bar, the tank and gas stations still exist in the form they were when used, and the tank could be resurrected and identified; so could the air pump and the pipes, which are part and parcel of the gas stations.

But the question, as to whether they may be identified, is not the point.

They are embedded in and physically annexed to the soil with concrete. They are immovable by their nature; as much so as are the wire screens, water pipes, storage pipes, radiators, bath tubs, lavatories, sinks, etc., attached to a building. They were intended to be attached to the soil forever.

Civil Code, Articles 467 and 469.

In Folger vs. Kenner, 24 Ann. 436, the court held that a double brick vault, lined with iron, attached with plaster or mortar to the walls of a house, and attached in the same way to the soil by a brick foundation running through the floor to the ground, could not be removed from the building by one claiming it.

The court said:

"The iron doors and linings could not be taken away without also removing the double brick vault which incloses them, and this in turn could not be removed without breaking the building to some extent.

"The whole affair might almost be considered an immovable by nature, having its foundation in the soil itself. Rev. C. C. 464. But it is at least immovable by destination under Rev. C. C. 468, 469, and the plaintiff has no more right to remove it than he has to remove a mantlepiece from the drawing-room."

The tank and the gas stations in this case are firmly affixed to and into the ground by cement and were so attached to be used in connection with the filling station.

Things immovable by destination are such as have been placed upon lands or lots by the owner for its service and improvement and all such movables as the owner has attached permanently to the tenement or to the building, such as mills and machinery made use of in carrying on plantation works, utensils necessary for working cotton mills and saw mills, sugar refineries, and the like.

Civil Code, Article 468.

It is significant that the Code specifies those things which "the owner of a tract of land has placed upon it" and "such movables as the owner has attached permanently to the tenement or to the building".

Immovables by destination are such as have been added to real estate. Such things are subject to the vendor's lien and privilege and may be sold and removed to satisfy the creditor's claim, provided, however, that they can be removed without injury to the immovable to which they are attached. But where a movable has been incorporated with and become a part of the realty, the vendor's privilege cannot be enforced against it.

The chattels which the vendor sold to Cole, in the case at bar, were not placed upon or added to the realty. They were

incorporated into it. The gasoline tank was buried beneath the surface of the ground and partially encased in concrete. The air pump and the pipes which form part of the gas stations were also embedded in the ground. The surface of the ground in which they are embedded was covered over with reinforced concrete seven inches thick. The exposed portions of the gas stations, that is, those parts above the surface, are attached to the realty by cement. The sinking of the tank, the encasing of it in cement, the placing of the air pumps in the ground, the covering of the ground with concrete, and the attaching of the stations to the realty with cement, were all done in the construction of the filling station. Under the circumstances, we think they have become a part of the realty and not merely immovable by destination, and that the vendor's privilege cannot be enforced against them.

Even if it be true, as contended by counsel for plaintiff, that the chattels are immovable by destination only and subject to the vendor's privilege, they cannot be sold separately from the real estate to enforce the privilege, for the reason that they cannot be removed without serious injury to the immovable.

To remove the tank and pumps would necessitate the tearing up and removal of three hundred square feet of reinforced concrete, and, when removed, there would be left a hole in the ground ten feet wide, ten feet deep, and thirty feet long. The filling station, as such, would not only be injured but in a large measure destroyed by the destruction of the driveway, which is a part of it. Not only that, but the contractor who built the station

testified that the excavation necessary to remove the tank might endanger the garage building; that the tank is only five or six feet from the footing of the front wall of the garage and that in a wet season the ground would probably slough and the walls cave in, which, he said, could be averted only by the use of piling. He said, however, that in a dry season there would be little probability of caving. He estimated that the cost of removing the tank would be seven hundred dollars and much more if piling had to be used to save the wall.

In the case of Re: Receivership of Augusta Sugar Co., Ltd., 134 La. 971, 64 South. 870, it was held that a vacuum pan used in connection with a sugar refinery was subject to the vendor's privilege, although its removal would necessitate the making of an opening in the wall of the corrugated iron structure enclosing it, which had been built over and around it for its protection. But the court said:

"The evidence shows that this could be done and the premises restored in their present condition at a comparatively trifling cost."

On rehearing, the court said:

"That the tanks can be removed without any injury to the sugar house cannot be disputed."

In that case the vacuum tank cost thousands of dollars and was placed in a cheap structure which formed no part of the sugar house. That decision was rendered by a divided court, two of the five justices dissenting.

In the case of Carlin, Administrator, vs. Gordy, Sheriff, 32 La. 1285, the privilege was claimed on a sugar mill and

machinery. The court recognized the privilege and permitted the machinery to be removed and sold separately, but said:

"The evidence fully establishes that the mill and machinery in this case can be removed without damage to the sugar house."

And the case of Lapene & Jacks vs. McCan, 28 La. Ann. 749, where the same question was involved, was reaffirmed.

In the latter case the court said:

"The evidence satisfies us that the boilers can be removed without damage to the sugar house, and, therefore, that it was not necessary that the whole property should be sold under a separate appraisement of the boilers."

In Pratt E. & M. Co. vs. Cecelia Sugar Co., 135 La. 179, 65 South. 100, the vendor's privilege on machinery was recognized, but the court observed that machinery usually forms no part of the building in which it is located, and said:

"The evidence shows that these articles of machinery may be readily removed without injury to themselves or any material damage to the plant."

In the case of Walburn-Swenson Co. vs. Darrell, 49 Ann. 1044, 22 South. 310, the court held that a judgment creditor whose vendor's privilege had been recognized under a judgment of the court, could seize, remove and sell the movable on which the privilege rested, although it had been added to the real estate, and cited Lapene & Jacks vs. McCan, 28 La. Ann. 749, and Carlin vs. Gordy, 32 La. 1285, supra, but added:

"The decisions qualify the right to cases in which the removal can be effected without injury to the immovable."

The filling station in this case is real estate and is mortgaged to the intervenors. It is encumbered to secure their debts. The breaking up and removal of the concrete and the excavation left after the removal of the tank would leave the filling station worthless and the security of the mortgage creditors thereby materially decreased.

It is true that the damage to the filling station caused by the removal of the tank and gas stations could be repaired, but who would bear the expense? The plaintiff, if allowed to remove them to satisfy his claim, would be under no obligation to repair the damage done.

Both of the intervenors are mortgage creditors in good faith. Their mortgages cover the realty and all appurtenances thereunto belonging. The plaintiff did not record its contract of sale nor did it in any way give notice of its claim. It knew that the chattels sold by it were to be used in the construction of the filling station. So far as the record shows, neither of the intervenors had knowledge that the price of those chattels was not paid in full.

The testimony showing that the chattels sold by plaintiff to Cole have been incorporated into the realty on which the mortgages rest in such a way that the removal of them would seriously damage the said realty, the plaintiff is now without right to have them removed and sold in order to collect its claim.

Cole, the defendant, was an absentee, and the plaintiff, in order to serve and bring him into court, attached certain realty owned by him. The lower court

rendered a personal judgment against him, which was error. The judgment can be effective in rem only.

For the reasons · assigned, the judgment appealed from is amended so as to be effective in rem only, and, as thus amended, it is affirmed at appellant's costs.