BRUNOT, J.
 

 Richard Sussman died testate on April 29, 1927, leaving an estate consisting of both real and personal property. The executor named in the will qualified. An inventory of the estate was made which showed that it consisted of one piece of real ■estate and some personal property. The real estate was incumbered with a vendor’s lien, and all except a small portion of the personal property with chattel mortgages. The succession was hopelessly insolvent, the debts due by it exceeding the inventoried value of the property more than $8,000. All of the property of the succession was sold, on the application of the executor and the intervening creditors, to pay debts. The sum realized from these sales was not sufficient to pay all of the privileged claims. The executor filed a provisional account showing the sum of money realized from the sales of the property and the order and manner in which he proposed to distribute the funds in his hands. Seven creditors of the succession, including the Italian Homestead Association, opposed the distribution. The opponents were heard, and the trial judge amended the account with respect to items that need not be mentioned here, and homologated the account, as amended. From this judgment the Italian Homestead Association alone appealed.
 

 The appellant has a vendor’s lien upon the real estate, and contends that its lien primes all law and administration charges. Appellant did not assert its rights via executiva, as it could have done, but it intervened in the probate proceedings and joined the executor in his application for the sale of the property to pay the debts of the succession. Under these circumstances we do not think appellant can be absolved from contributing its proportion of the necessary costs of administration and legal charges. Succession of Neugueloua, 52 La. Ann. 1496, 27 So. 962; Succession of Mrs. Atilano Blanco, 4 Orl. App. 229; Succession of Finegan, 135 La. 473, 65 So. 614.
 

 Nor can appellant be absolved from the payment of the taxes assessed against the property subject to its vendor's lien. The taxes were due at the date of the sale, and would have been deducted from the purchase price of the property, as well as the costs of the foreclosure, if appellant had proceeded via executiva. Section 33 of Act 170 of 1898.
 

 Appellant contends that Act 126 of 1926, which act amends section 9 of Act 120 of 1902, was passed solely for the protection of homestead associations, and, because of a provision of that act, the doctrine announced in Succession of Neugueloua, cited supra, does not apply to such associations. The provision relied upon is as follows:
 

 “Such vendor’s privilege and mortgage, shall have priority over all other liens, charges, privileges, incumbrances, and mortgages upon the property and the building and improvements thereon, which shall be recorded or claimed subsequent to the recording of such vendor’s privilege and mortgage, o.r which may arise in any manner whatsoever subsequent to the date of recordation.”
 

 
 *354
 
 The trial judge held, and we think, correctly so, that appellant had waived the benefits of the provision of Act 126 of 1926, now invoked, by intervening in the probate proceedings and joining the executor in his application to have the property sold, in those proceedings, to pay the debts of the succession.
 

 Appellant contends that an oil burner which was installed on the premises by the deceased, after he acquired the property, had become immovable by destination. There is no evidence to support this contention. A concrete foundation was laid to support the weight of the oil tank, but Mr. Mayer Godchaux testified that the building and burner were entirely separate and distinct and that the burner could be removed without any damage to itself or to the building. The learned trial judge wrote a carefully prepared opinion in the case, in which he has reviewed all of the issues presented, and we find that his conclusions are correct. We therefore quote his opinion and adopt it as our own:
 

 “This matter comes before the court on certain oppositions to the executor's account. The succession is hopelessly insolvent, and the question presented to the court is one of ranking privileged creditors according to their priority. There will not be enough funds with which to pay all of the privileged debts, and therefore not any funds whatsoever to pay ordinary creditors. The sole assets of the succession consisted of one piece of real estate upon which there is a vendor’s lien and homestead mortgage, certain movable property subject to vendor’s liens, and a small quantity of movable on which there was no special liens.
 

 “All of the property was sold in the succession, on the application of the executor, to pay debts, and all parties asserting vendor’s liens asked for separate sales of property subject to their liens in the probate proceedings. The result of the sales are as follows:
 

 Real Estate 2134 Broadway St., vendor’s lien claimed by Italian Homestead Ass’n $14,500 00
 

 Household furniture, vendor’s lien claimed by Abraham Burglass..................... 539 75
 

 Quiet May Oil Burner, vendor’s lien claimed by Mayer-Godchaux Co., Inc..... 375 00
 

 Copeland Refrigerating Unit, vendor’s lien claimed by Paul E. Renaud.............. 170 00
 

 Movable property not subject to any special lien or privilege....................... 168 00
 

 Total cash to be distributed.............$15,752 75
 

 “The total amount of costs and administration charges, all of which were incurred and were necessary to the sale of the property amount to $2,028.35, all itemized in the account except $100 due Richard Lyons, attorney for absent heirs. Some of these items are to be borne exclusively by the respective pieces of movable and immovable property sold, such as auctioneer’s fees, hospital fee, advertising, etc., and other items such as law charges and necessary costs of administration are to be borne in the proportion that the price, the respective pieces of property brought at the public sales thereof bears to the total amount realized from the sales of all of the movable and immovable property. The costs of administration and selling the property must be paid by preference and priority to the said vendor’s lien and privilege on both the real estate and movables aforesaid. Succession of Neugueloua, 52 La. Ann. 1496, 27 So. 962; Succession of Mrs. Atilano Blanco, 4 Orl. App. 229; Saluan v. Creditors, 106 La. 217, 30 So. 696; Succession of Campbell, 115 La. 1040, 40 So. 449. In the argument at bar, reference was made to Act 126 of 1926, but the court is of the opinion that this act has no application to the present case, especially in view of the fact that the Italian Homestead Association intervened in the probate proceedings and asked that the real estate be sold therein, which was done.
 

 
 *356
 
 “The court is of the opinion that the vendor’s liens and privileges on both the real estate and movable property prime all other claims, such as funeral bills, expenses of last illness, second mortgages, etc., and therefore there will not be any fund with which to pay. these claims. The costs of administration and of selling the property, being the only items which prime the vendor’s liens and privileges on the real and movable property and respective funds realized from the sale thereof, it is a matter of mathematics to figure out the respective portions that each of these vendor lien claimants must pay towards the necessary costs of selling the property, which include the administration costs. These figures are placed' in the judgment of the court.
 

 “The only funds on hand that are not burdened with a vendor’s lien and privilege is the sum of $168, realized from the sale of certain movable property not subject to any special lien or mortgage. All of the other funds realized from the sale of other movable property are subject to vendor’s liens and privileges. This sum of $168 in its entirety must be devoted first to the payment of the costs of selling the property and administration costs, thus exhausting this fund.
 

 “The court is of the opinion that the oil burner has not been so erected and attached as to become immovable, and the vendor thereof will be ranked as the other vendors of movable property.
 

 “The only other items to be' disposed of is the question of taxes assessed against the real estate herein and paid by the Italian Homestead Association. For 1926 they amount to $81.77, and the pro rata for 1927 to $193.26, making a total of $275.03 claimed by the said Homestead. At the trial of this case, $44.28 was paid by a previous owner of the property as his pro rata of the taxes of 1926. This sum should be used to reimburse the Homestead. The lien for taxes upon immovable property is confined to the property upon which the tax is assessed. Section 33, Act 170 of 1898; Succession of Finegan, 135 La. 473, 65 So. 614. Therefore, any balance due the Homestead can only come out of the proceeds of the sale of the real estate subject to its vendor’s lien, which fund of $14,-500 was retained in the hands of the said Homestead.
 

 “The account was opposed in its entirety as to all claims, and after due advertisement, all of the ordinary creditors as well as the New Orleans
 
 &
 
 Northeastern Railroad Company, judgment creditor, and Dr. Henry Blum, Dr. A. Mogabgab, and Dr. Alex. R. Crebbin failed to appear and to make the necessary proof of their claims, and they are therefore denied.”
 

 For -these reasons, the judgment appealed from is affirmed, at appellant’s cost.