ROGERS, J.
 

 The plaintiff foreclosed a mortgage which he held on the Laurel Grove plantation owned by the defendant. Relator intervened in the proceeding, and by third opposition asserted its vendor’s lien on a certain lot of railroad materials sold to defendant, obtaining an order for the separate appraisement and sale of the materials with recognition of its privilege on the proceeds.
 

 The judgment of the'district court was in relator’s favor, recognizing its lien and privilege. This judgment was reversed by the Court of Appeal for the First Circuit. See Caldwell v. Laurel Grove Co., Inc., 140 So. page 68. The case is now before us on a writ of review granted upon the application of the intervener and opponent.
 

 The record reveals that in October, 1926, the defendant Laurel Grove Company, Inc., owner and operator of. the Laurel Grove plantation, purchased from the Morgan’s Louisiana
 
 &
 
 Texas Railroad & Steamship Company a lot of secondhand rails, switches, and other related railroad supplies for the price of ?1>-851.25, represented by the vendor’s promissory note.
 

 The Laurel Grove Company, Inc., had previously constructed a roadbed for two switch tracks on its plantation by throwing up a dump and placing cross-ties thereon. Upon this completed roadbed the defendant company laid the rails, installed the switches, and placed the other materials bought from the railroad and steamship company.
 

 The roadbed constructed by defendant extended from its sugar refinery to a building used for the storage of bagasse, and the switch tracks laid thereon connected with the railroad line operated by opponent. The total length of the switch tracks was something less than 2,000 feet, and when completed, they were mainly used by the Celotex Company, the purchaser under contract of the bagasse produced by the defendant’s refinery, in hauling the bagasse from the refinery to its baling plant. Prior to the sale of the bagasse to the Celotex Company, the defendant plantation company had used it for fuel at its mill.
 

 The plaintiff, as seizing creditor, urges in opposition to the claim of the opponent railroad company that the switches when completed became by nature and destination part of defendant’s plantation, and that the vendor’s privilege claimed by opponent, if it ever existed, was thereby extinguished.
 

 The following facts, stated by the intervener and third opponent, were accepted as correct by the Court of Appeal, viz.:
 

 “The identity of the property seized with that sold by the railroad company on a credit, was conclusively established. And it was fur
 
 *931
 
 ther shown that this property could be removed from the roadbed (ties and dump) very easily and without appreciable cost, as compared with its value. That it was secondhand rail when sold; that it would not be junk if removed from the ties on Laurel Grove Plantation, but would be substantially the same as when it was bought from the railroad company. That the dump or roadbed on which the rail had been placed had been built prior to the purchase of the rail and was a separate and distinct thing. That if the rails were removed from the ties, the plantation would suffer no material injury and that Laurel Grove Plantation would in fact be in identically the same condition after such removal of the rails as it was when the rails and switch material was bought. That the switches were in no sense a necessary part of the plantation, the plantation having operated its sugar house for many years without them and having installed them purely as convenience for a third person who was buying its bagasse.” 140 So. page 69.
 

 In this state the vendor of movables is accorded a privilege for the unpaid price of the property sold, so long as the property remains in the possession of the vendee and can be identified. Oiv. Code, arts. 3227 and 3231.
 

 Relator argues that the rule is applicable even though the movable
 
 property be
 
 incorporated in immovable property, if the movable property can be reclaimed in substantially the same condition it was when sold and without working material injury to the immovable to which it is attached. Per contra, plaintiff argues that the vendor’s privilege is destroyed whenever the' movable property ceases to be movable property by becoming merged in immovable property. Both parties cite numerous decisions of this court in support of their respective positions.
 

 Relator refers to the following cases, viz.: Lapene & Jacks v. MeCan & Son, 28 La. Ann. 749; Carlin v. Gordy, 32 La. Ann. 1285; Shelly et al. v. Winder, 36 La. Ann. 182; Baldwin v. Young, 47 La. Ann. 1466, 17 So. 883; Walburn-Swenson Co. v. Darrell, 49 La. Ann. 1044, 22 So. 310; Hall et al. v. Hawley & Co., 49 La. Ann. 1046, 22 So. 205; In re Receivership of Augusta Sugar Co., 134 La. 971, 64 So. 870; Pratt E. & M. Co. v. Cecelia Sugar Co., 135 La. 179, 65 So. 100; Succession of Sussman, 168 La. 349, 122 So. 62.
 

 Respondent refers to the following cases, viz.: Swoop v. St. Martin, 110 La. 237, 34 So. 426; Hibernia Bank & Trust Co. v. C. F. Knoll Planting & Mfg. Co., 133 La. 697, 63 So. 288, 294; Milliken
 
 &
 
 Farwell v. Roger, 138 La. 823, 70 So. 848; Morgan’s Louisiana & T. R. R. & S. S. Co. v. Himalaya Planting & Mfg. Co., 143 La. 460, 78 So. 735.
 

 Lapene & Jacks v. McCan & Son was a case in which McCan
 
 &
 
 Son obtained judgment against plaintiffs for the unpaid purchase price, with recognition of their vendors’ lien, on four boilers used bn plaintiffs’ plantation. It does not appear from the report of the case whether the claim for the vendors’ privilege was resisted or whether it was admitted as being correct by the parties litigant. The seizure and sale of the boilers under execution was enjoined on the ground, among others, that, being attached to the plaintiffs’ sugar house by bricks and mortar, they were exempt from the vendors’ privilege. Although this court remarked, in its opinion, that the question was settled by the judgment enjoined, it also stated that the judgment did not
 
 *933
 
 provide the method of execution. The court found from the evidence that the boilers could he removed without damage to the sugar-house, and therefore held that it was not necessary that the whole property should be sold under a separate appraisement of the boilers.
 

 The case has some pertinence, as showing that, even though it was only by a district court, the vendors’ privilege on the boilers was judicially recognized, and that a movable subject to a vendor’s lien may be detached in the enforcement of the lien from an immovable to which it has been attached by bricks’ and mortar.
 

 Moreover, Justice Wyly filed a concurring opinion in the case, in which he expressed the view that movables attached to a plantation and which could be detached without, damage to the structures in which they are-contained or with which they are connected are subject to the vendor’s privilege, and might be separately sold in enforcing the privilege. Justice Wyly’s view was expressly ap-. proved by this court in Carlin v. Gordy.
 

 Carlin v. Gordy w-as a case in which a mortgage creditor enjoined the execution of a judgment recognizing a vendor’s lien on a sugar mill and machinery which had been attached to his plantation by the mortgage debtor.' This court, after thoroughly discussing the issue presented, held that the conversion of the movables into immovables by incorporating them in the plantation did not operate to the prejudice of the vendor’s privilege; the mill and machinery being removable without damage to the sugar house.
 

 The court, in the course of its opinion, said:
 

 “The privileges resting upon movables are, 5n some cases affected by the changes which may take place in the nature or destination of the things. But such changes must be so radical as to create a new species of thing ,and destroy that species which originally existed — as, to use the illustrations of Cujas, when a pine or cypress log is converted into •a ship, or when wool is converted into a garment, or when marble is made into a statue.
 

 “In the case at bar, the mill and machinery have suffered no such change by the use which the vendee has made of them. They remain the mill and machinery which were sold; and the privilege subsists in all its force. Had their destination as immovables been effected in such manner as to preclude their- detachment without injury to independent rights .of ownership in the soil or structures, the •privilege might have been subjected to such limitation in its exercise as would prevent the separate sale or removal of the things subjected to it. But where, as in this case, no such difficulty exists, or, if at all, to an inappreciable extent, we see no reason for imposing any restriction upon the rights of the privileged creditor.
 

 “The privilege of the vendor is founded on ,the right of property. Payment of the price is essential to the vesting of an indefeasible title in the vendee. The vendor’s rights (to, and securities for, the payment of the price have always commended themselves to the favorable consideration of our courts.”
 

 Shelly v. Winder involved the question of whether the vendor’s lien on certain mules was destroyed when the mules on being attached to a plantation became immovables by
 
 *935
 
 destination. This court, citing Carlin v. Gordy and other authorities, held that the purchase of such movables as mules could not be extinguished by impressing upon them the merely metaphysical character of immovables by destination, but that such destination was suboz-dinate to the rights of the vendor.
 

 In Baldwin v. Young, plaintiff sought to enjoin the removal of a heater and its attachments which the owner had placed in a building acquired by plaintiff at the foreclosure sale of a mortgage held by him.' The unpaid vendor urged as against the mortgage creditor the right to remove the heating equipment under his conditional sale thereof to the owner of the mortgaged property. The court sustained the vendor. In examining the question presented, the court found that the vendor’s privilege on movable -property is not lost when the property becomes immobilized by destination. In discussing this proposition, the court said:
 

 “The principle that movables added to the immovable for its improvement, while inflexibly applied as between the owner and his vendee or mortgagee, is yet subject to well-defined exceptions. The Code itself recognizes the right of the third person to remove or claim compensation for his works or constructions on the immovable of another; yet, if made by the owner, the improvements would undoubtedly be subject to any mortgage by him on the immovable. Civ. Code, arts. 506, 507. So the privilege accorded by law to the vendor of movables still subsists, though the movables are attached by the purchaser to the immovable, and will be enforced against the mortgage creditor. The French commentators state the law by a commonplace illustration: The workman sells the farmer a tub, which he places on his farm for its improvement. The tub thus becomes part of the immovable. But shall this change deprive the workman of his privilege? The commentators answer in the negative, and affirm, until paid for, the vendor, notwithstanding the change, preserves ‘un droit reel’ on the article sold. 1 Troplong, Priv. & Hypoth. [No. 113]; Lapene v. McCan, 28 La. Ann. 749; Hall v. Wyche, 31 La. Ann. 735; Carlin v. Gordy, 32 La. Ann. 1285.”
 

 And the court reasoned that, “If the law will not allow the mortgage creditor to defeat the privilege on the movable which, unpaid for, happens to be placed in the building subject to the mortgage, it is not easy to appreciate why on the same principle the ownership of the movable should not be equally protected against the mortgage creditor.”
 

 Baldwin v. Young was, in effect, overruled so far as it sustained the validity of conditional sales in this state, but not so far as it sustained the right of an unpaid vendor to enforce his privilege on the movable sold, notwithstanding by the act of the vendee it has become part of an immovable.
 

 Walburn-Swenson Co. v. Darrell, Hall v. Hawley & Co. and In re Receivership of Augusta Sugar Co. approved and maintained the prior jurisprudence on the.subject. We quote from the syllabus in the latter case, viz.:
 

 “A vendor’s privilege upon movables as machinery is not lost by their becoming immovables by destination, and it may be asserted so long as the machinery is complete in itself and can be removed without destruction. * * *
 

 “That it is necessary to cut the rivets and take apart iron tanks in order to facilitate re
 
 *937
 
 inoval will not prevent tlie unpaid seller from asserting his vendor’s privilege thereon.”
 

 In Pratt E. & M. Co. v. Cecelia Sugar Co., the decision in the Augusta Sugar Company Case was reaffirmed as being in accordance with the prior jurisprudence, and the decision in Carlin v. Gordy was also expressly approved.
 

 And, finally, in the Succession of Sussman, the vendor’s lien was • enforced against an oil burner which had been erected on a concrete foundation and was removable without serious damage to the building.
 

 We will now consider the four cases referred to by the seizing creditor.
 

 The earliest of these 'cases is Swoop v. St. Martin. There the plaintiff, a foundry operator, repaired the sugar mill of the defendant, furnishing specially prepared pieces to fit with the old pieces of the mill. The court found that the materials so furnished, if separated from the mill, would become nothing but scrap iron, and held that, under such circumstances, the materials had lost their identity, and the vendor’s lien was destroyed. But the court expressly distinguished the case from the case of Carlin v. Gordy, which impliedly met with its approval.
 

 Hibernia Bank & Trust Co. v. Knoll Planting & Mfg. Co. was a foreclosure proceeding in which the Murphy Iron Works intervened claiming (1) an undertaker’s privilege for labor and material furnished in the construction of the sugar house on the mortgaged plantation ; and (2) a vendor’s lien on a bagasse and syrup conveyor and a fifteen-foot section of smokestack. Intervener’s principal claim was based on its alleged undertaker’s privilege, and the court, in its opinion, mainly devoted itself to the discussion of the validity of that claim. There is no discussion of the facts applicable to intervener’s claim of a vendor’s privilege, which the court disposed of in these words, viz.:
 

 “The bagasse and' syrup conveyor and the 15-foot piece or section of smokestack are shown to have been added to and merged in the sugar house and thereby to have become parts of an immovable to which the lien for their price does not extend. Swoop v. St. Martin, 110 La. 237, 34 So. 426.”
 

 Possibly, the court assumed that both the piece of smokestack and the conveyor would become mere junk if detached from the sugar house and hence had lost their identity. But neither the Swoop Case, nor the Knoll Case predicated thereon, is in conflict with the jurisprudence reflected in the cases referred to by the plaintiff in injunction. This is clearly shown in Re Receivership of Augusta Sugar Company, supra, where both cases are expressly commented upon by the court.
 

 The decision in Milliken & Parwell v. Roger was also based on the Swoop Case. The question presented for decision there was whether machinery parts by incorporation in the machinery of the plantation factory became simply parts of the whole, or retained their independent character. The district court, in line with the jurisprudence, sustained the vendor’s lien on the theory that the parts had not lost their identity; that they could be detached without injury to the rest of the machinery and without thereby being converted into scrap iron. But this court took a view different from that of the district court, and, upon the authority of the Swoop Case, and after directing attention to the significance of the difference in the original
 
 *939
 
 cost of the materials and the amount they realized at the sheriffs sale as showing their loss of character as things of commerce, rejected the claim for a vendor’s privilege: In these circumstances, we do not think the Mil-liken & Harwell Case can be said to be out of harmony with our established jurisprudence.
 

 The seizing creditor finds some support for his contention in the case of Morgan’s Louisiana & Tesas R. R. & S. S. Co. v. Himalaya Planting & Mfg. Co., which decision is, referred to by the Court of Appeal as the controlling authority for its decision in this case.
 

 In the cited case, a divided court, on facts practically similar to those before us here, held that railroad iron, such as rails and angle bars, lost their identity as movables, subject to the vendor’s privilege, when they were used in the construction of a railroad on a plantation.
 

 The court, quoting Civ. Code, arts. 462, 463, and 464, declared that the railroad when completed became a new and distinct thing, an immovable by nature, from which its several constituents could not be withdrawn without destroying the thing itself. Other than to remark that the case is within the doctrine as stated in Re Receivership of Augusta Sugar Co., that the right to assert a vendor’s privilege is lost upon materials used in the repair or construction of a building, which thereby become subjected to another privilege — that of the furnisher of material — the court does not discuss nor refer to the prior decisions which established the jurisprudence on the subject. But, as we have heretofore shown, In re Receivership of Augusta Sugar Co. also approved the doctrine sanctified by the jurisprudence, that a vendor’s privilege on movables is not lost by their becoming immovables and may be asserted so long' as the movable is complete in itself and can be removed without destruction;
 

 The Court of Appeal finds that the rails and their accessories are not junk and are still valuable, and that the mortgaged plantation would not be seriously impaired if they were removed, but the court holds that, as the materials have no separate existence as movables, having become part of an immovable by nature, the vendor’s privilege thereon was extinguished.
 

 When the rails and other materials were sold to the owner of the plantation, they were impressed with the vendor’s privilege, and it is difficult for us to see how the privilege can be defeated by the use the vendee made of them, since they are not appreciably affected by such use. The rails and their accessories have not been converted into a new species of thing. They remain rails and railroad iron even though attached to the ties. They can be removed without affecting any independent rights of ownership in the soil or structure, for when they are removed the soil and the¡ roadbed will remain in the same form and condition they were before the materials were attached thereto.
 

 We adhere to the jurisprudence established in the long line of cases which we have mentioned and discussed, to the effect that the unpaid vendor enjoys a real right in the thing sold to which the right of the purchaser is subordinated, so that, if the thing can be identified and reclaimed in substantially the same condition as when sold and without material injury to the structure to which it is attached, the vendor’s lien is enforceable, even though
 
 *941
 
 the use of the structure may he temporarily impaired.
 

 So far as the four cases cited by the seizing creditor, and hereinabove mentioned and discussed, particularly the case of Morgan’s Louisiana & Texas R. R. & S. S. Co. v. Himalaya Planting & Mfg. Co., are inconsistent with the jurisprudence established by the cases relied on by relator, they must be considered overruled.
 

 Eor the reasons assigned, the judgment of the Court of Appeal is annulled, and the judgment of the district court is reinstated and made the final judgment of this court.