55 So.2d 685 (1951)
CRISTINA INV. CORPORATION
v.
GULF ICE CO., Inc. (Lilly Co., third-party opponent).
No. 3480.
Court of Appeal of Louisiana, First Circuit.
December 20, 1951.
*686 Heller & Heller, New Orleans, for appellant.
Martin, Himel, Hinckley & Morel, New Orleans, for appellee.
ELLIS, Judge.
The Cristina Investment Corporation, plaintiff herein, brought foreclosure proceedings against the Gulf Ice Company, Inc., the defendant, under a mortgage it held against the real property of the defendant. The property securing the mortgage and vendor's lien notes was an ice manufacturing plant, which was seized and sold, but the amount of the sale was insufficient to satisfy the indebtedness sued upon.
Plaintiff's mortgage was dated April 28, 1949 and recorded May 28, 1949. On July 7, 1949 the Lilly Company sold to the Gulf Ice Co. a certain ice crusher, which was placed upon the premises upon which the plaintiff held the mortgage.
The Lilly Company, third opponent herein, prior to the date of the foreclosure sale, obtained an order directing the Sheriff to appraise and sell separately, and to hold the proceeds thereof, a certain ice crusherslinger which the Lilly Company had sold to the defendant and upon which it claimed a vendor's lien arising from a conditional sales contract executed and performed in this State.
The ice crusher was sold under the order obtained for $1350.00 and the funds were held by the Sheriff subject to the disposition of the Court.
The District Court on the trial dismissed the rule and rendered judgment in favor of the plaintiff, Cristina Investment Corporation, and against the Lilly Co., third opponent, decreeing the proceeds from the sale of the ice crusher to be paid to the plaintiff.
From this judgment the Lilly Co., third opponent, has appealed.
There is a stipulation of facts in the record between the Cristina Investment Corporation and the Lilly Co., agreeing that: On July 7, 1949 the Lilly Company, a Tennessee corporation, sold to the Gulf Ice Company, one model 440, new ice crusherslinger complete with motor, hose and swivel nozzle. This machine was the same model and exactly similar to the model 440 machine illustrated on page 7 of the Link Belt Company's catalog, which catalog was introduced and filed as evidence. The sale was made under a conditional sales contract signed by both parties in the State of Louisiana and is filed in the record. The Gulf Ice Company did not make the payments as promised, and on March 22, 1951 was indebted to the Lilly Co. in the amount of $1326.00 plus interest at 6% from March 22, 1951 until paid, and *687 all costs and expenses incurred in the collection of said indebtedness. That the ice crusher was appraised separately from the other assets of the Gulf Ice Co. and was sold separately by the Sheriff at a valid judicial sale for the sum of $1350.00, the proceeds of said sale to be held by the Sheriff subject to the disposition of the Court.
Only two witnesses testified, both of whom were called by the plaintiff. The first was Mr. Robert J. Cristina, who testified that prior to April, 1949 he operated the ice plant, which was later sold to the Gulf Ice Co., and that at the time he operated it the plant sold most of the ice it processed to boats and that most of this ice was furnished in crushed form. Further, that the ice crusher in question was one of two maintained by the plant, and that after 1949 he visited the plant only occasionally, but that there was no change in the nature of the operation thereof.
The other witness was Mr. Victor Webb, a graduate engineer, whose business is designing, selling and erecting refrigerator plants. He testified he was familiar with the plant in question, and had on the day of the trial inspected it, especially with respect to the installation and use of the ice crusher, forming the basis of this suit.
He testified the machine was designed as a portable or stationary unit, and that it was located on a platform near the dock about 25 or 30 feet from the plant; that the wheels were still on the machine, but that blocks had been nailed to the platform to keep the machine from rolling. He further stated that the intake part of the ice crusher was moved up, touching the conveyer belt coming out of the ice plant, and was held on by means of angle irons, which were part of the machine itself, or had been put on to the crusher, and that these angle irons had been pushed into the wood of the conveyer belt. He observed that the electric wires to the crusher came from the plant, and that by removing the blocks in front of the wheels and straightening the angle irons and attaching a plug to the electrical wires, the machine could be used as a portable unit, and that these operations would take three or four hours at most to complete, and could be done without any damage to the dock, the conveyer belt, or any other part of the plant.
While we have not been favored with any written reasons for judgment, appellant's brief and appellee's supplemental brief state the trial Court was of the opinion the machine had become an immovable by destination and attached to the realty in such a manner it could not be removed without damaging the realty, and consequently, although sold subject to a vendor's lien, this privilege was out-ranked by the first mortgage and vendor's lien previously executed and recorded on the ice factory.
In Louisiana a vendor of movables is given the privilege for the unpaid price of the property sold as long as the property remains in the possession of the vendee and can be identified. Revised Civil Code, Articles 3227 and 3231.
The third opponent firstly urges the ice crusher did not become an immovable by destination but retained its character as a movable, and secondly, even though the movable property be incorporated into immovable property as the machine can be removed and reclaimed in substantially the same condition it was when sold, without serious or material injury to the immovable to which it is attached, that its vendor's lien primes the mortgage in question.
On the other hand, the appellee insists the crusher has become a permanent rigid installation, immovable by destination, and a component part of the ice manufacturing plant, continuously used in this business, and it cannot be detached without working material injury to the immovables covered by the mortgage which he claims and therefore out-ranks third opponent's vendor's lien and privilege.
First, we might mention that under the law of Louisiana, which does not recognize conditional sales, such contracts are considered outright sales vesting absolute title in the buyer, but a vendor's lien is thereby created when entered into and executed in Louisiana. Graham Glass Co. v. Nu Grape Bottling Co., 164 La. 1103, *688 115 So. 285; In re New Orleans Milling Co., D.C., 263 F. 254.
A leading case upon the questions involved in the case at bar is Caldwell v. Laurel Grove Co., Inc., 1932, 175 La. 928, 144 So. 718, 721. There a Third party opponent vendor had sold to a plantation a lot of second hand rails, switches, and other related railroad supplies, and this material was all made into a railroad on the plantation's road-bed. A foreclosing mortgage creditor claimed the equipment, maintaining it had become immovable by destination and by nature, and that the vendor's privilege claimed by the opponent was extinguished. The District Court recognized the vendor's lien, the Court of Appeal reversed this holding, and the Supreme Court reinstated the judgment of the District Court upon application for writs, saying:
"When the rails and other materials were sold to the owner of the plantation they were impressed with the vendor's privilege, and it is difficult for us to see how the privilege can be defeated by the use the vendee made of them, since they are not appreciably affected by such use. The rails and their accessories have not been converted into a new species of thing. They remain rails and railroad iron even though attached to the ties. They can be removed without affecting any independent rights of ownership in the soil or structure, for when they are removed the soil and the roadbed will remain in the same form and condition they were before the materials were attached thereto.
"We adhere to the jurisprudence established in the long line of cases * * * mentioned * * * to the effect that the unpaid vendor enjoys a real right in a thing sold to which the right of the purchaser is subordinated, so that, if the thing can be identified and reclaimed in substantially the same condition as when sold and without material injury to the structure to which it is attached, the vendor's lien is enforceable, even though the use of the structure may be temporarily impaired."
The contentions of both parties in the Caldwell case are practically those urged herein. Justice Rogers reviews the authorities cited by both litigants at some length, concluding the cases cited by the seizing creditor inconsistent with the jurisprudence established by the cases relied on by the third opponent, and consequently considers them overruled.
Since the Caldwell case numerous decisions have followed the doctrine therein expressed, some of the more applicable being: Hall v. Hawley, 1897, 49 La.Ann. 1046, 22 So. 205; Payne & Joubert v. Bufford, 1902, 106 La. 83, 30 So. 263; In re Receivership of Augusta Sugar Co., 1914, 134 La. 971, 64 So. 870; Milliken & Farwell v. Roger, 1916, 138 La. 823, 70 So. 848; Globe Automatic Sprinkler Co. v. Bell, 1935, 183 La. 937, 165 So. 150; Cottonport Bank v. Dunn, La.App.1945, 21 So.2d 525.
All of these cases hold a mortgage on the real estate does not destroy the vendor's privilege on an immovable by destination placed on the property mortgaged as long as the object is complete in itself and can be removed without much damage. However, if the movable has become so incorporated thereto, or merged into the immovable property as to have become part and parcel of it, the vendor's privilege on the movable is lost. Swoop v. St. Martin, 110 La. 237, 34 So. 426; Hibernia Bank & Trust Co. v. Knoll Planting & Mfg. Co., 133 La. 697, 63 So. 288; Monroe Auto & Supply Co. v. Cole, 6 La.App. 337; St. Mary Iron Works v. Community Mfg. Enterprise, 9 La.App. 743, 119 So. 564.
The problem to be solved here is, first, whether in fact the ice crusher became immovable by destination, and even if it did, was it still identifiable as such and could it be removed from the premises without "much damage."
Immovables by destination are defined in Article 468 of the Louisiana Civil Code, which reads in part as follows: "Things which the owner of a tract of land has placed upon it for its service and improvement, are immovable by destination. * *"
The Article then listed certain items to be immovable by destination, but our Courts have restricted the application of the Article to the items listed, therefore that part *689 of the Article is not material in this case.
The same Article reads further, as follows:
"The utensils necessary for working cotton, and saw-mills, taffia distilleries, sugar refineries and other manufactures.
"All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination."
In Campbell v. Hammond Box & Veneer Co., Ltd., La.App., 167 So. 111, 112, there was a sequestration of adding machines, type writers, filing cabinets and other office equipment from a box company, and the holders of a real mortgage upon the premises objected, claiming these articles were immovable by destination. The Court, commenting upon this, stated: "These articles were used in connection with the operation of the factory and, while not absolutely necessary to its operation, their use was very convenient and almost indispensable to the successful operation of the factory."
Further, that these items were placed in the factory "solely for the convenience of the particular business conducted on the property." The Court held that they were not immovable, citing many authorities for its conclusion.
The record discloses the ice crusher, upon which relator claims his privilege, was used to crush ice after it was manufactured, and blew it into boats which moored at the plant's dock for this service. There does not appear to be the necessary attachment to the realty for us to consider the machine to have become an immovable by destination. The authorities upon this point are contrary to such a conclusion. However, a determination upon this point is not necessary even though the machine had become an immovable by destination, under the authority of Caldwell v. Laurel Grove Co., supra, and other authorities cited as the vendor's lien and privilege was preserved against the mortgage creditor.
Here the machine was not in the building at all, and the only connection with the dock of the ice company were the blocks put in front of the wheels to keep the machine from rolling, and the angle irons pressed into the conveyor coming out of the ice plant, and electric wires running to the plant. It would seem the machine could be removed without any material injury to the real estate whatsoever.
Our Federal Courts have been presented with the same problem we find here on several occasions, where a vendor's lien has conflicted with the claim of a mortgage creditor on an object that has become immovable by destination. In State Trust Co. v. De La Vergne Refrigerating Machine Co., 5 Cir., 105 F. 468, 476, a vendor asserted his privilege on cotton compresses against a real mortgage creditor. The Court quoted and discussed many Louisiana cases, especially Lapene v. McCan & Son, 28 La.Ann. 749, 751; Carlin v. Gordy, 32 La.Ann. 1285, and Baldwin v. Young, 47 La.Ann. 1466, 17 So. 883. The Court, in deciding for the vendor against the mortgage creditor, said: "In Walburn-Swenson Co. v. Darrell, 49 La.Ann. 1044, 22 So. 310, Hall v. Hawley, 49 La.Ann. 1046, 22 So. 205, and [Monroe Building and Loan] Association v. Johnston, 51 La.Ann. 470, 25 So. 383, it is again held that the privilege of the unpaid vendor on the movable is not lost because it has been attached to the immovable. In each of these last three cited cases the contest was between the mortgage creditor and the vendor of the movable, but in neither is there any reference to any registry of the vendor's privilege as in any wise affecting the rights of the parties. The opinion of the court in Baldwin v. Young, supra, so far as it overrules and modifies Gary v. Burguieres, supra [12 La.Ann. 227], is vigorously attacked as obiter, because the case showed that the movables involved were sold under a contract that, until paid for, the vendor should be the owner of the thing sold, and registry vel non was not in question. So far as the necessity of registry was concerned, we think it depended on the determination of an issue as to whether quoad the vendor the movable sold had been so merged in the immovable that the vendor could no longer assert his privilege on the identical thing sold; and, to the extent that this *690 question was involved, we cannot agree that the enlightened views so well expressed by Mr. Justice Miller, delivering the opinion of the court, were obiter; and, so far as anything favorable to appellant here can be claimed, because the sale in Baldwin v. Young, supra, was a conditional sale, we may inquire what substantial difference can be urged between a so-called conditional sale and an ordinary sale in which the vendor's privilege is preserved, so far as the right to recover the unpaid price is concerned? `The privilege of the vendor is founded on the right of property. The payment of the price is essential to the vesting of an indefeasible title in the vendee.' Carlin v. Gordy, supra. Whether the sale be conditional or absolute, retaining the vendor's privilege, the vendor in each case may subject the thing sold to the payment of the unpaid purchase money; and in equity the results in each case are the same. In Louisiana it is well understood that, as against third persons, the vendor's privilege on an immovable must be recorded. Rev.Civ.Code, Art. 3274. See Act No. 45 of 1877. In substance, this has been the law since the Code of 1825. The variations have been with regard to the manner and time of registry. It is equally understood in Louisiana that the vendor's privilege on a movable is not lost by failure to record the same. This has been the law since the adoption of the constitution of 1879. The real question considered in the above-cited cases was, when, in favor of third persons and against the vendor, does a movable attached to land, tenement, or building become an immovable, or part thereof, by destination? And we understand the decisions of the supreme court of the state to be uniformly (except in Gary v. Burguieres, supra) to the effect that, so long as the price is unpaid, and the movable has not lost its identity, and can be separated from the land, tenement, or building to which it has been attached without injury to the immovable, as to the vendor it remains a movable, and he may subject the same to his vendor's privilege, the registry of the same being immaterial." See Whitney-Central Trust & Savings Bank v. Luck, 5 Cir., 231 F. 431; Tangipahoa Bank & Trust Co. v. Kent, 5 Cir., 70 F.2d 139.
Appellee also contends that the relator's privilege cannot prevail as it was not recorded.
In Weiss v. Hudson Construction Co., 151 La. 1, 91 So. 525, 526, the vendor of a truck and automobile under an unrecorded bill of sale asserted his lien against the holder of a chattel mortgage on the vehicles which had been recorded after the sale. The Supreme Court decided the Chattel Mortgage Statute did not change the prior law derived from Articles 3186 and 3227 of the Civil Code, that a vendor's lien on a movable did not require recordation, and held that a subsequent recorded chattel mortgage was subservient to the lien. The language of the Court follows: "The General Assembly has never passed any general or special law by which a vendor's privilege on movable property is required to be recorded in order to have effect, either as between the parties or as to third persons. Until such a law is passed, a vendor's privilege once created will continue to exist without being recorded, until it is lost or superseded in some manner provided by law. The Civil Code declares the privilege to be a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages. Article 3186. And he who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, if the property still remains in the possession of the purchaser. C.C. art. 3227."
In Baldwin v. Young, 47 La.Ann. 1466, 17 So. 883, it was said: "The vendor of a movable is apprised by law that, without registry, he preserves a privilege on the thing sold. Civ.Code, art. 3227".
For the above reasons, the judgment of the lower court is hereby reversed and it is ordered, adjudged and decreed that there be judgment in favor of the third opponent as prayed for.