GARDINER, Judge.
Plaintiff appeals from a judgment of the Civil District Court for the Parish of Orleans maintaining an exception of no cause of action and dismissing its suit.
American Creosote Works, Inc., which became the owner of all the property and assets of the American Creosote Works of Louisiana, Inc., in liquidation, sued defendant, George J. Springer, to recover the sum of $12,000.00 alleging plaintiff was obligated to pay this amount to the Illinois Central Railroad Company for railroad trackage, consisting of rails and angle irons constructed upon plaintiff’s property, when it failed to return the trackage to the Railroad Company at the termination of their written lease. Plaintiff sold its property to defendant by authentic act of sale, and defendant is resisting plaintiff’s claim on the assertion that he became the owner of the land and all improvements, including the railroad trackage, which was not expressly excepted. Defendant later sold the rails and angle irons as scrap metal.
In its petition plaintiff alleges that on March 31, 1949, the American Creosote Works of Louisiana, Inc., (hereinafter referred to as plaintiff’s predecessor) was the owner of certain property located at Southport, in the Parish of Jefferson, and on that date its predecessor entered into a written agreement with the Illinois Central Railroad Company to lease certain track-age “laid across petitioner’s property by the said railroad company, the said lease agreement being a lease of said trackage by the said railroad company * * A copy of the lease is attached to the petition.
Plaintiff further alleges that on October 8, 1962, it sold the aforementioned property to defendant by authentic act, but that it did not and could not include the trackage because of the said lease agreement; that “defendant was informed before the passage of the aforementioned act of sale that the trackage did not belong to petitioner, and consequently, that same would not, and could not be sold by petitioner to it. The act of sale was passed with the understanding between the parties that the trackage was not included.”
Plaintiff also avers that defendant disposed of the “switch trackage” in 1964 and used the proceeds thereof himself; that plaintiff, under the terms of the lease, was obligated to pay the Railroad Company $12,000.00 if it did not return the trackage at the termination of the lease. And lastly plaintiff asserts that being unable to comply with the demands of the railroad company to return the trackage or its value, plaintiff paid the $12,000.00 and obtained a subrogation from the Railroad Company of all of its rights against defendant.
We do not know upon what grounds the exception of no cause of action was maintained as the record does not contain reasons of the trial judge for dismissing the suit. However, defendant contends that he acquired title to the real estate and the trackage on the faith of the public records and that the authentic act of sale under which he purchased the property from plaintiff is full proof thereof.
It is the settled jurisprudence of this state that, in determining the issues raised by an exception of no cause of action, the well pleaded facts in the petition and the facts contained in any annexed documents must be accepted as true. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54.
We shall first consider the exception on the allegation that defendant had knowledge of the fact that plaintiff *535 did not own the trackage and that when the sale was executed it was with the understanding between the parties that the trackage was not included. Under such an allegation, if true, plaintiff seeks to prove by inadmissible evidence that the property was conveyed without a reservation by which trackage was excluded. The petition contains no allegation of fraud or error. Without such an allegation parol evidence may not be introduced for the purpose of contradicting, varying, or adding to a written agreement. Without alleging fraud or error, plaintiff may not introduce parol evidence to show that its intentions were other than those stated in the authentic act of sale. Neck v. Neck, La.App., 169 So.2d 401; LSA-C.C. art 2276. Our Supreme Court in Franton v. Rusca, 187 La. 578, 175 So. 66, stated the well settled and unbroken rule of law in this State, citing many cases, as follows:
“ * * * in the absence of any allegation of fraud or error, conditions, and stipulations beyond those expressed in an authentic act, and what may have been said before, or at the time of, or since the execution thereof, can be proven only by means of a counter-letter or by the use of interrogatories on facts and articles.”
In giving consideration to the exception of no cause of action, the court also must weigh all the facts contained in the documents annexed to and incorporated in the petition by reference. O’Reilly v. Poche, La.App., 162 So.2d 787. Moreover, the entire record must be considered in making this determination. Succession of Pickett, La.App., 189 So.2d 670.
The act of sale referred to in plaintiff’s petition contains the description of the property sold to defendant, but it does not refer to the trackage as such. However, the description contains the following language :
“A certain portion of ground, together with all the buildings and improvements thereon, all appurtenances and dependencies and all rights, ways, privileges, ser-vitudes, advantages and prescriptions thereunto belonging or in anywise appertaining to the property situated in Jefferson Parish and composed of part No. 2 of the Ludger Fortier Plantation, sfc * jj< a
Defendant claims that the trackage, which had been constructed on the property long before his purchase of the realty, became immovable property either by nature or by destination, and that he took title thereto by virtue of his purchase of the realty on the faith of the public records, having no notice of plaintiff’s claim. He relies upon the provisions of articles 464 and 468 of the Civil Code.
As stated above, plaintiff’s predecessor corporation, on March 31, 1949, entered into a written lease with the Illinois Central Railroad Company whereby the Railroad furnished and leased to the corporation sufficient rails and angle bars, specified therein, for lessee’s use. Pertinent portions of the lease are as follows:
“Whereas, the Lessee has constructed certain tracks aggregating about 16,491 feet at Southport, Louisiana, the approximate location of said tracks being shown in red on the plat * * * and desires to lease from the Railroad Company sufficient rails * * * and angle bars * * * to construct said tracks, it is now mutually agreed as follows:
“1. The Railroad Company has previously delivered to Lessee at Southport, Louisiana, a sufficient amount of second-hand rail, together with angle bars, to construct the said tracks.
“2. The rails and angle bars herein agreed to be furnished shall be measured and counted before delivery and a memorandum made, to be signed by the parties hereto, of the number and length of rails of each nominal or pattern weight, and of the number of angle bars actually delivered to the Lessee.
*536 “3. For the use of the rails and angle bars furnished and leased to the Lessee by the Railroad Company the Lessee hereby agrees to pay the Railroad Company rent in accordance with the following rental schedule * *

Lessee in performing the agreements in this paragraph contained, said rails and angle bars shall, at the option of the Railroad Company, be deemed to be converted to the use and benefit of said Lessee, and the Lessee shall, at the option of the Railroad Company, be liable to it for the full value thereof, as such value is herein specified and fixed.
“5. The Lessee shall pay all taxes that may be levied or assessed upon the rails and angle bars furnished under this agreement, while the same remain in its possession.
“6. It is understood and agreed that the title to the said rails and angle bars shall remain in the Railroad Company, that they shall remain personalty and shall not become part of the realty, and that upon the termination of this agreement the Lessee will take up said rails and angle bars • and deliver them loaded upon cars of the’ Railroad Company on its Railroad, the angle bars to be detached from the rails and loaded separately. * * * ”
The lessee also agreed to and did deliver to the Railroad Company a $12,000.00 indemnity bond for the faithful performance of the lease. It is this amount it forfeited and paid the railroad which it is seeking to recover from its vendee who had purchased the realty.
The lease was not recorded. The defendant’s act of sale shows that, from the attached mortgage and conveyance certificates, there were no alienations nor encumbrances bearing against the property.
Our laws of registry apply to defendant in this case as applied by this court to the defendants in a very similar situation in Industrial Outdoor Displays v. Reuter, La.App., 162 So.2d 160, cited by counsel for defendant. There the court said:
“It is clear that under our laws of registry defendants are entitled to rely on the public records and are not bound or barred by unrecorded claims against the property, even though they may have had actual notice thereof gained dehors the public records. See LSA-C.C. Art. 2266; LSA-R.S. 9:2721; McDuffie v. Walker, 125 La. 152, 51 So. 100; Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392; Vaughn v. Kemp, 4 La.App. 682.
“It is also clear that defendants by virtue of their purchase acquired clear title to the real estate together with all the buildings and all other immovables situated on the land free and clear of all unrecorded claims and equities. See Prevot v. Courtney, 241 La. 313, 129 So.2d 1.”
In the above cited case the plaintiff had leased the roof of a building from defendants’ vendor for the purpose of erecting and maintaining thereon display signs. The lease, which was not recorded, contained similar provisions, i. e., the signs, etc., should remain the personal property of plaintiff with the privilege of removing them at any time. Two signs were constructed by plaintiff above the building and were attached to the ground in cement making them as permanent as possible in order to last for years. Plaintiff claimed the signs were movables, and was attempting to remove the structures or recover from the present owners the value thereof. This court held that the signs were constructions and became immovables by nature under the provisions of LSA-C.C. art. 464.
The rails and angle irons leased by plaintiff in this case were attached to cross ties, embedded in the realty belonging to plaintiff’s predecessor, which plaintiff used as a “switch track” in its business to remove its materials from its land to the main line of the Railroad Company. They *537 were not emplaced upon any right of way of the railroad company but instead upon the realty owned by plaintiff, the lessee of the rails and angle irons. This trackage was on the property when defendant purchased it and remained there until April, 1964, when defendant tore it up and sold it for scrap iron.
LSA-C.C. art. 464 provides that: “Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature.”
In a very early case, Morgan’s Louisiana A. & T. R. & S. S. Co. v. Himalaya Planting & Mfg. Co., 143 La. 460, 78 So. 735, the Supreme Court considered the question of whether a railroad, consisting of railroad iron such as rails and angle irons, was a construction. Plaintiff had entered into a contract with defendant to furnish it “with railroad iron to build certain railroad tracks on its plantation.” The railroad was built, but defendant failed to pay for some of the material used in the construction and suit was brought to collect the indebtedness. Defendant admitted an indebtedness for part of the amount and judgment in the district court was rendered therefor but recognition of a vendor’s privilege on the iron and material was refused. On appeal the Supreme Court held that the road, when constructed, became a part and parcel of the plantation, not as an immovable by destination, but as an immovable by nature, based on article 464 of the Civil Code, stating that: “* * * it will hardly be denied that a railroad is a ‘construction’ * * It also held that the ties, rails, spikes, irons, plates and ballast lost their character as movables, for all purposes of the vendor’s privileges, which plaintiff was seeking to enforce.
We are aware of the later case, Caldwell v. Laurel Grove Co., 175 La. 928, 144 So. 718. There the seizing creditor was seeking to maintain his vendor’s privilege under articles 3227 and 3231 of the Civil Code on movable property consisting of rails and other material, sold to the plantation owner. The court said that the privilege could not be defeated by the use the vendee made of the equipment, since they were not appreciably affected by such use, and overruled the case of Morgan’s Louisiana & Texas R. R. & S. S. Co. v. Himalaya P. & Mfg. Co., supra, insofar as it was inconsistent with the established jurisprudence. The Supreme Court did not consider whether the railroad was a construction under Article 464, and what was said in the former case as to the railroad being a construction and becoming an immovable by nature is applicable in the present matter.
“Other constructions,” whether they have their foundations in the soil or not, are immovable by their nature. Prevot v. Courtney, 241 La. 313, 129 So.2d 1. The Court of Appeal, Second Circuit, in Vaughn v. Kemp, 4 La.App. 682, said that there is no qualification to the rule set out in LSA-C.C. art. 464. A construction, within the textual provisions of that article, is an immovable by nature when erected on the land.
From the facts and jurisprudence relating to the situation here, we have reached the conclusion that the switch track or trackage, consisting of rails and angle irons, erected on plaintiff’s land was an immovable by nature.
Plaintiff, however, asserts that the rails and angle irons remained movables, and therefore it was not necessary to record the lease.
Counsel for plaintiff rely entirely upon the case of Louisiana Ry. & Nav. Co. v. Cash Grocery & Sales Co., 150 So. 57, in which the Court of Appeal, First Circuit, held that a spur track, consisting of rails, switch fixtures, etc., constructed by the railroad on another’s land, remained movable, and that since contracts affecting movable property do not have to be recorded, the plaintiff’s right and title to the tracks remained unimpaired. There plaintiff sought to remove the rails from the land *538 which had been purchased by the defendant from the mortgage creditor who had foreclosed. on its mortgage and purchased at the foreclosure sale. Defendant resisted plaintiff’s claim on the ground that the spur track became immovable by destination. In the cited case no contention was made that the trackage was immovable by nature. Under these circumstances we cannot hold that the case is controlling here where defendant’s argument is that the railroad trackage is a construction, and we find that article 464 is applicable.
Plaintiff had ample means of protecting itself by recording the lease; otherwise the purchaser (defendant) has no means at all of protecting himself against claims of this type if he is not entitled to rely upon the law of registry.
For the reasons assigned, the judgment appealed from maintaining the exception of no cause of action is correct and is hereby affirmed. Costs are to be paid by plaintiff.
Affirmed.