270 So.2d 588 (1972)
LONG LEAF LUMBER, INC., Plaintiff-Appellant,
v.
SUMMER GROVE DEVELOPERS, INC., Defendant-Appellee, and
Shreveport Wholesale Credit Men's Association, Inc., Intervenor-Appellee.
No. 11890.
Court of Appeal of Louisiana, Second Circuit.
September 12, 1972.
*589 Booth, Lockard, Jack, Pleasant & LeSage by Troy E. Bain, Shreveport, for plaintiff-appellant.
Love, Rigby, Dehan & Love by Kenneth Rigby, Shreveport, for intervenor-appellee.
Before AYRES, PRICE and HALL, JJ.
HALL, Judge.
This case on appeal presents a conflict between the holder of an interim mortgage affecting certain immovable property consisting of a lot and newly constructed residence, and the alleged holder of a vendor's privilege and/or chattel mortgage affecting certain air conditioning and heating equipment installed in the residence.
The litigation originated as a foreclosure by executory process brought by Long Leaf Lumber, Inc., on a mortgage granted by Summer Grove Developers, Inc., covering Lot 161, Hyde Park Subdivision, Unit No. 3, in the City of Shreveport, Louisiana. Shreveport Wholesale Credit Men's Association, Inc., as assignee of Arkansas Louisiana Gas Company (Arkla), intervened in the proceedings seeking (1) to have its vendor's lien and privilege and chattel mortgage recognized and maintained on certain air conditioning and heating equipment alleged to be movable property; (2) to have its vendor's lien and privilege and chattel mortgage declared to prime plaintiff's mortgage; and (3) to have the movables appraised and sold separately from the immovable property belonging to defendant and under seizure by plaintiff.
The alleged movable property described in the intervenor's petition consisted of three large component parts and a thermostat of the central heating and air conditioning system installed in the newly constructed residence located on the premises under seizure. The district court ordered a separate appraisal and sale of the alleged movables and ordered the sheriff to hold the proceeds of the sale until further order of the court. The property was sold accordingly and after trial, judgment was rendered in favor of intervenor ordering the sheriff to pay to intervenor the amount of money held by him as a result of the separate sale of the movable property. From this judgment plaintiff appealed.
The facts of the case are undisputed. On June 16, 1969, Summer Grove Developers, Inc. Granted a mortgage in the principal sum of $19,800, affecting the lot which *590 is the subject of this suit. The mortgage was recorded the same day at which time the property consisted of a vacant lot with no improvements thereon, as evidenced by an affidavit recorded the next day in compliance with LSA-R.S. 9:4819 to the effect that no work had begun and no materials had been furnished as of that date. The mortgage was given in order to secure interim financing for the construction of a residence on the lot. Plaintiff, Long Leaf Lumber, Inc., was and is the holder of the mortgage and supplied interim financing.
On June 10, 1969, Summer Grove Developers, Inc. entered into an "Equipment Purchase Contract and Chattel Mortgage" with Arkla. In this contract, Arkla agreed to furnish and install a complete air conditioning and heating system, including duct work, wiring and piping, in accordance with specifications and drawings approved by Summer Grove Developers. In order to secure payment of the price as stipulated in the contract, Summer Grove Developers granted to Arkla a chattel mortgage on the equipment to be furnished. This contract, containing the chattel mortgage provisions, was recorded on June 20, 1969, four days after plaintiff's mortgage was recorded. Arkla's rights under the contract were subsequently assigned to Shreveport Wholesale Credit Men's Association, Inc.
The issues presented by the above facts are:
(1) Did Arkla have a valid vendor's lien and privilege on the heating and air conditioning units and, if so, did its rights prime those of plaintiff under its mortgage?
(2) Did Arkla have a valid chattel mortgage on the heating and air conditioning equipment and, if so, did its rights thereunder prime those of plaintiff under its mortgage?
In support of its position on the first issue, intervenor contends that Arkla was the vendor of the movable property under consideration, the purchase price has not been paid, the property can be identified, it is in the possession of the purchaser, and, therefore, intervenor has a vendor's lien and privilege under the provisions of LSA-Civil Code Article 3227. Intervenor further contends that under the settled jurisprudence, the property can be removed without substantial injury to the structure to which it is attached (which fact the evidence supports) and, therefore, the vendor's lien and privilege is still enforceable even though the property has been incorporated into a building. Globe Automatic Sprinkler Co. v. Bell, 183 La. 937, 165 So. 150 (1936); Caldwell v. Laurel Grove Co., 175 La. 928, 144 So. 718 (1932); Cristina Inv. Corporation v. Gulf Ice Co., 55 So.2d 685 (La.App.1st Cir. 1951).
On the other hand, plaintiff contends that there was no vendor-vendee relationship between Arkla and Summer Grove Developers because the contract entered into between them was a building contract covered by LSA-Civil Code Articles 2756 et seq., and not a contract of sale out of which a vendor's lien and privilege might arise.
The contract did not involve merely the sale of the air conditioning and heating units. It provided for the installation of the entire heating and air conditioning system, including design and drawings prepared by Arkla and approved by Summer Grove Developers, major equipment and incidental components, duct work, grilles, registers and duct insulation and all piping. The contract was a building contract and not a contract of sale. While not involving questions of vendor's lien or privilege, several Louisiana cases have distinguished between building contracts and contracts of sale and have held that the articles of the Code relating to sales do not apply to building contracts. Mangin v. Jorgens, 24 So.2d 384 (La.App.Orl.Cir.1946); Wurst v. *591 Pruyn, 250 La. 1109, 202 So.2d 268 (1967); Papa v. Louisiana Metal Awning Company, 131 So.2d 114 (La.App. 2d Cir. 1961).
Since this was not a contract of sale no vendor-vendee relationship existed between Arkla and Summer Grove Developers and, therefore, Arkla (and its assignee) had no valid vendor's lien or privilege on the air conditioning and heating units involved in this case.
Plaintiff's next argument, concerning the chattel mortgage, is twofold. First, plaintiff contends that the chattel mortgage is invalid because the description of the property is insufficient to properly identify it. Secondly, plaintiff argues that even if intervenor's chattel mortgage is valid, it is primed by plaintiff's mortgage under the provisions of LSA-R.S. 9:4801 et seq., which is special legislation designed to regulate construction of private works and which controls over the Chattel Mortgage Act which is general legislation.
The chattel mortgage describes the property as follows:
 "1 Arkla ACB36 - 00
 1 Arkla UFA 100
 1 Arkla AOCH 36 - 00
 1 T'STAT"
In addition to this description, the instrument also gives the lot number and street number where the equipment is to be installed.
It is true, as contended by plaintiff, that on the date the mortgage was executed the items were still in Arkla's warehouse and had not been segregated from other like equipment nor delivered to the location stated in the instrument.
The jurisprudence has established the rule that the absence of serial numbers or other specific identification of movable property does not render the chattel mortgage invalid if the movable property is the only one of its kind at the location given in the chattel mortgage and thereby subject to identification. The Chattel Mortgage Act does not require a description of the property mortgaged so as to be capable of identification by the written recital or name used to designate it in the mortgage, but a description enabling third parties, aided by such reasonable inquiries which the instrument itself suggests, to identify the property, is sufficient. Union Bldg. Corporation v. Burmeister, 186 La. 1027, 173 So. 752 (1937); Remington-Rand v. Profits Island Gravel Co., 144 So. 636 (La.App.1st Cir. 1932); Smith v. Bratsos, 202 La. 493, 12 So.2d 245 (1942).
In the present case, there was only one heating and air conditioning system in the residence. The chattel mortgage itself clearly indicates the location of the chattels both by street address and legal description of the property. Therefore, under the cited authorities, the chattel mortgage is not invalid for lack of a proper description of the property mortgaged.
In support of its position, intervenor relies upon the provisions of LSA-R.S. 9:5357 which provides:
"When any movable property whatsoever which is subject to a mortgage granted under the provisions of this Part shall be moved to and located in or upon any immovable property, or installed therein or thereon in such a manner as to make the chattel an immovable by nature or by destination, the chattel shall be and will remain movable in so far as the mortgage upon it is concerned, and shall not pass by the sale of the immovable property to which it has been actually or fictitiously attached, whether such sale be conventional or judicial. No sale or mortgage of the immovable property shall in any manner affect or impair the rank or privilege of the chattel mortgage, or the remedies of the holder thereof for its enforcement."
*592 In short, the statute provides that if a movable subject to a chattel mortgage is installed upon immovable property in such a manner as to make the chattel an immovable by nature or destination, the chattel shall nevertheless remain a movable insofar as the chattel mortgage upon it is concerned.
Plaintiff relies on LSA-R.S. 9:4801 et seq., and especially, LSA-R.S. 9:4819 which provides that a mortgagee "shall maintain any and all privileges to and priority over all other liens and claims as conferred by Title 9, and particularly, 9:4801, 9:4812, and 9:4813." Plaintiff urges that LSA-R.S. 9:4801 et seq., is special legislation regulating the construction industry and exclusively regulates the respective rights of lenders, contractors, suppliers of material, laborers, etc., among themselves.
LSA-R.S. 9:4801 et seq., appears in Chapter 2 of Title 9, entitled "Privileges on Immovables." It creates claims and privileges in favor of contractors, subcontractors, suppliers of material, laborers, etc., against the land and improvements thereonagainst immovable property. These sections do not create the rights of a mortgage holder, but do regulate the ranking of a mortgage as opposed to privileges created by these sections, all bearing against immovable property.
On the other hand, the Chattel Mortgage Act creates rights against movable property. LSA-R.S. 9:5357 provides that movable property subject to a chattel mortgage installed upon immovable property remains a movable for purposes of the chattel mortgage which is not affected or impaired by a sale or mortgage of the immovable.
The issue here is not one of ranking conflicting rights or privileges. Long Leaf's rights as mortgagee are against the immovable property. The equipment involved, although it otherwise would be immovable by destination or nature when installed in the residence, remained movable under the express and specific provisions of LSA-R.S. 9:5357. Thus, the rights of the chattel mortgage holder remain intact and the rights of the mortgagee of the immovable property never attached.
Intervenor is entitled to the proceeds of the judicial sale attributable to the separately appraised and sold movable property.
For the reasons assigned, the judgment of the district court is affirmed.
Affirmed.